**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

ERIC WILKINS, MAHARI BELL,
ESSENCE JEFFERSON,
JOSE MANUEL ALMANZA, JR., and
JACQUEZ BEASLEY,

                Plaintiffs,

      v.

CITY OF CHICAGO, et al.,

                Defendants.

Case No. 23-cv-4072

Judge Mary M. Rowland

Magistrate Judge Beth W. Jantz

**DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' COMPLAINT
<u>PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(B)(6)</u>**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ...................................................................................... i

I.     INTRODUCTION ......................................................................................... 1

II.    BACKGROUND .......................................................................................... 3

III.   LEGAL STANDARD ................................................................................... 5

IV.   ARGUMENT ................................................................................................ 5

      A.    CPD Must Be Dismissed With Prejudice Because It Is Not A Suable Entity. .................................................................................................. 5

      B.    Plaintiffs' Claims Are Time-Barred To The Extent They Seek Relief Arising From Incidents Outside Of The Applicable Statute Of Limitations. ....................................................................................... 6

      C.    Plaintiffs' Federal Equal Protection Claim (Count I) Should Be Dismissed Because Plaintiffs Fail To Plausibly Allege Discriminatory Purpose. .................................................................... 7

      D.    Plaintiffs' Title VI Claim (Count II) Should Be Dismissed Because Plaintiffs Fail To Plausibly Allege Discriminatory Purpose, The City Is Not A "Program or Activity," CPD Is Not A Suable Entity, And Plaintiffs Lack Statutory Standing. ............................................. 11

      E.    Plaintiffs' State Constitutional Claim (Count III) Should Be Dismissed Because The Illinois Constitution Does Not Provide Plaintiffs An Independent Cause Of Action And, Even If It Did, Plaintiffs Fail To Plausibly Allege Discriminatory Purpose. .............................. 13

            1.    Article 1, Section 2 of the Illinois Constitution does not provide Plaintiffs an independent cause of action for civil rights violations against the City. ........................................... 13

            2.    Plaintiffs fail to plausibly allege discriminatory purpose. ....................... 15

      F.    Plaintiffs' Claim Under The Illinois Civil Rights Act (Count IV) Should Be Dismissed. ................................................................... 15

            1.    Plaintiffs have not identified what specific policies or practices comprise the "mass traffic stop program" and cause disparate impact. ..................................................................... 16

            2.    Plaintiffs have not alleged a robust causal connection. ........................... 18

V.    CONCLUSION ............................................................................................ 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adams v. City of Indianapolis*,
  742 F.3d 720 (7th Cir. 2014) ................................................................16

*Alston v. City of Madison*,
  853 F.3d 901 (7th Cir. 2017) ...............................................................11

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)...........................................................................5, 8

*Bond v. Atkinson*,
  728 F.3d 690 (7th Cir. 2013) ......................................................7, 8, 10

*Bonnstetter v. City of Chicago*,
  No. 13-CV-4834, 2014 WL 3687539 (N.D. Ill. July 24, 2014)............14

*Brazil v. Fashion Angels Enters.*,
  No. 17-CV-824, 2018 WL 3520841 (E.D. Wis. June 29, 2018) ............8

*Brown-Dickerson v. City of Philadelphia*,
  No. CV 15-4940, 2016 WL 1623438 (E.D. Pa. Apr. 25, 2016) ............13

*Cary v. Ne. Ill. Reg'l Commuter R.R. Corp.*,
  No. 19 C 03014, 2020 WL 1330654 (N.D. Ill. Mar. 22, 2020) ..................15, 16, 18

*Cent. Austin Neighborhood Ass'n v. City of Chicago*,
  2013 IL App (1st) 123041....................................................................16

*Chan v. City of Chicago*,
  777 F. Supp. 1437 (N.D. Ill. 1991) .......................................................5

*Chavez v. Ill. State Police*,
  251 F.3d 612 (7th Cir. 2001) ...........................................................7, 11

*Conviser v. DePaul Univ.*,
  532 F. Supp. 3d 581 (N.D. Ill. 2021) ..................................................13

*Davis v. City of Chicago*,
  481 F. Supp. 3d 757 (N.D. Ill. 2020) ....................................................6

*DeGenova v. Sheriff of DuPage Cty.*,
  209 F.3d 973 (7th Cir. 2000) .................................................................5

*Dickerson v. City of Chicago*,
No. 21-CV-2955, 2022 WL 3369271 (N.D. Ill. Aug. 16, 2022) ............................................5

*Gray v. City of Chicago*,
159 F. Supp. 2d 1086 (N.D. Ill. 2001) .................................................................5, 12

*H.P. v. Bd. of Educ. of City of Chicago*,
385 F. Supp. 3d 623 (N.D. Ill. 2019) ...................................................................11

*Hearne v. Bd. of Educ. of City of Chicago*,
185 F.3d 770 (7th Cir. 1999) ...........................................................................10

*Hodges v. Pub. Bldg. Comm'n of Chicago*,
864 F. Supp. 1493 (N.D. Ill. 1994) ...............................................................12, 13

*Hodges v. Pub. Bldg. Comm'n of Chicago*,
873 F. Supp. 128 (N.D. Ill. 1995) ......................................................................12

*Hosick v. Chicago State Univ.*,
2011 WL 6337776 (N.D. Ill. Dec. 19, 2011) .................................................14, 15

*Jackson v. Cerpa*,
696 F. Supp. 2d 962 (N.D. Ill. 2010) ...................................................................16

*Knowlton v. City of Wauwatosa*,
No. 20-CV-1660, 2023 WL 2480353 (E.D. Wis. Mar. 13, 2023) .........................12

*McCauley v. City of Chicago*,
671 F.3d 611 (7th Cir. 2011) ...........................................................................5, 8

*McCleskey v. Kemp*,
481 U.S. 279 (1987)...........................................................................................7, 8

*McFadden v. Bd. of Educ. for Ill. Sch. Dist. U-46*,
984 F. Supp. 2d 882 (N.D. Ill. 2013) ...................................................................16

*McIntosh v. Kelly*, No. 16-CV-1018-SMY,
2020 WL 1264425 (S.D. Ill. Mar. 16, 2020) ....................................................6, 14

*Mellott v. Sprague*,
334 F. Supp. 3d 916 (C.D. Ill. 2017) ...................................................................15

*Mizuho Corp. Bank (USA) v. Cory & Assocs., Inc.*,
341 F.3d 644 (7th Cir. 2003) ..............................................................................6

*Monroe v. Columbia Coll. Chi.*,
990 F.3d 1098 (7th Cir. 2021) ............................................................................6

*Porter v. Pipefitters Ass'n Loc. Union 597, U.A.*,
  No. 12-CV-9844, 2013 WL 5162206 (N.D. Ill. Sept. 12, 2013) ...............................................4

*Posey v. Pruger*,
  762 F. Supp. 2d 1086 (N.D. Ill. 2011) ....................................................................................5

*Puffer v. Allstate Ins. Co.*,
  675 F.3d 709 (7th Cir. 2012) .................................................................................................17

*Quinn v. Bd. of Educ. of the City of Chicago*,
  234 F. Supp. 3d 922 (N.D. Ill. 2017), *aff'd sub nom. Quinn v. Ill.*, 887 F.3d
  322 (7th Cir. 2018).................................................................................................................10

*S.J. v. Perspectives Charter Sch.*,
  685 F. Supp. 2d 847 (N.D. Ill. 2010) ....................................................................................14

*Schroeder v. City of Chicago*,
  715 F. Supp. 222 (N.D. Ill. 1989) .........................................................................................12

*Singleton v. City of E. Peoria*,
  No. 15-CV-1503, 2016 WL 1408059 (C.D. Ill. Apr. 8, 2016) ................................................9

*Smith v. Severn*,
  129 F.3d 419 (7th Cir. 1997) .................................................................................................15

*Swan v. Bd. Of Educ. of City of Chicago*,
  2013 WL 4401439 (N.D. Ill. Aug 15, 2013) ...................................................................16, 18

*TBS Grp., LLC v. City of Zion, Ill.*,
  No. 16-CV-5855, 2017 WL 5129008 (N.D. Ill. Nov. 6, 2017) ........................................18, 19

*Texas Dep't of Hous. & Cmty. Affs. v. Inclusive Communities Project, Inc.*,
  576 U.S. 519 (2015)......................................................................................................18, 19, 20

*Uni*Quality, Inc. v. Infotronx, Inc.*,
  974 F.2d 918 (7th Cir. 1992) ...................................................................................................8

*Velazquez v. Williams*,
  No 14-CV-9121, 2015 WL 4036157 (N.D. Ill. June 30, 2015)..............................................14

*Veljkovic v. Bd. of Educ. of City of Chicago*,
  No. 20 C 1551, 2020 WL 7626735 (N.D. Ill. Dec. 22, 2020) ................................................13

*Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*,
  429 U.S. 252 (1977)..................................................................................................................8

*Whren v. United States*,
  517 U.S. 806 (1996)..................................................................................................................7

*Wilson v. Giesen*,
    956 F.2d 738 (7th Cir. 1992) ............................................................................6

**Statutes**

740 ILCS 23/5(a)(1) ............................................................................15

740 ILCS 23/5(a)(2) ............................................................................15, 16

740 ILCS 23/5(b) ............................................................................6

42 U.S.C. § 2000d ............................................................................11

42 U.S.C. § 2000d-4a(1) ............................................................................12

**Other Authorities**

Fed. R. Civ. P. 17(b)(3) ............................................................................5

Federal Rule of Civil Procedure 12(f) ............................................................................4

Defendants City of Chicago ("City") and Chicago Police Department ("CPD"), through their undersigned counsel, move to dismiss the Class Action Complaint For Declaratory And Injunctive Relief [Doc. 1] ("Complaint" or "Compl.") pursuant to Rule 12(b)(6).

## I.     INTRODUCTION

Plaintiffs Erik Wilkins, Mahari Bell, Essence Jefferson, Jose Manuel Almanza, Jr., and Jacquez Beasley are Chicago drivers who allege they were stopped pursuant to a "mass traffic stop program" administered by Defendants. In their four-count putative class action Complaint, Plaintiffs contend, largely on information and belief, the traffic stops were a pretext for race discrimination, in violation of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution (Count I), Title VI of the Civil Rights Act of 1964 (Count II), Article I, Section 2 of the Illinois Constitution (Count III), and the Illinois Civil Rights Act of 2003 ("ICRA") (Count IV).

Plaintiffs' Complaint suffers from defects that warrant dismissal for failure to state a claim. As a threshold matter, the Complaint improperly names CPD as a defendant and includes claims falling outside the applicable limitations periods. CPD is not a suable entity because it lacks a legal existence separate from the City. It therefore must be dismissed from this action. In addition, Plaintiffs' federal and ICRA claims are subject to a two-year statute of limitations. Accordingly, Plaintiffs cannot state a federal or ICRA claim for any traffic stop that occurred before June 2021.

Plaintiffs' federal equal protection and Title VI claims must be dismissed for other reasons. Despite their lengthy pleading, which is heavy on allegations regarding investigatory stops prior to 2016, Plaintiffs fail to plausibly allege that CPD acted with a discriminatory purpose in carrying out the traffic stops at issue. Of the 42 traffic stops described in the Complaint, Plaintiffs claim that most were pretextual based on "information and belief." (*See* Compl. ¶¶ 43, 50, 70, 85, 89, 96, 97, 101, 109, 125, 132, 138, 142, 149, 176, 182, 188, 196, 203, 217, 223, 229, 234, 240, 245,

262, 277, 298, 302, 309, 313, 319, 334, 346, 350, 357, 368, 371, 437.) Absent, however, are any factual allegations to support these suppositions. Plaintiffs fail to allege a discriminatory purpose behind each of the individual stops, or a broader policy directive showing that they were stopped because of, and not in spite of, their race. Plaintiffs' statistics, which also comprise much of the Complaint, similarly cannot, without more, establish the discriminatory intent necessary to state a federal equal protection claim.

Plaintiffs' Title VI claim fares no better. First, Plaintiffs' Title VI claim must be dismissed for the same reason as their federal equal protection claim. Title VI authorizes a private right of action only as to acts of intentional discrimination, which Plaintiffs have not plausibly alleged. Second, the statute prohibits discrimination only as to "programs or activities" receiving federal funding, and the City does not qualify as either within the meaning of the statute. In addition, Plaintiffs lack statutory standing to sue under Title VI, which extends only to intended beneficiaries of, applicants for, and participants in federally funded programs. Plaintiffs' threadbare claim that they are the "intended beneficiaries" of federal funding simply because they came into contact with CPD does not establish their standing to sue under Title VI.

Plaintiffs have likewise failed to state a claim under state law. Article I, Section 2 of the Illinois Constitution does not provide Plaintiffs with any entitlement to relief, as it does not allow for a private right of action. In addition, a federal civil rights action under the Equal Protection Clause of the Fourteenth Amendment provides Plaintiffs with an adequate remedy for any violations of their civil rights assuming that they could sustain such a claim, which they cannot. Even if a private right of action were available, Plaintiffs' state constitutional claim fails because they have not plausibly alleged that the City acted with the requisite discriminatory purpose. Plaintiffs' disparate treatment claim under ICRA likewise fails in the absence of discriminatory

purpose. While Plaintiffs also attempt to bring a disparate impact claim under ICRA, they fail to identify a specific policy or practice that causes any alleged disparities, or the type of robust causal connection necessary to state an ICRA claim. For the reasons further stated below, the Complaint should be dismissed in its entirety.

## II.     BACKGROUND

In this putative class action, Plaintiffs allege that, collectively, they were subjected to a total of 42 traffic stops from late 2017 to summer of 2023. (*See* Compl. ¶¶ 39-374.) For 39 of the stops, Plaintiffs allege "on information and belief" that the reason for the stop was pretextual. In the other three instances, Plaintiffs claim that they felt they were being treated as a criminal because of their race or that an officer's aggressive questioning was indicative of pretext, or they do not mention pretext at all. (*See Id.* ¶¶ 109, 160-171, 196.) Plaintiffs generally allege that the stops did not result in the issuance of any citations.[1] However, misdemeanor charges were brought and later dismissed against Plaintiff Jefferson, and Plaintiff Beasley was stopped for failing to display a front license plate, which he acknowledges he kept in his trunk. (*See id.* ¶¶ 169, 343.) Plaintiffs allege that most of the stops occurred in neighborhoods where the majority of the population is Black or Latino. Some stops, however, occurred in neighborhoods where the population was at least 50% White, and in some cases, no demographic information about the neighborhood is alleged. (*See, e.g.*, *id.* ¶¶ 86, 103, 122, 129, 140, 147.)

Plaintiffs contend that they were stopped pursuant to what they refer to as CPD's "mass traffic stop program"—a term coined by Plaintiffs, as no allegations state that Defendants refer to CPD's execution of traffic stops as, or part of, a program. (*Id.* ¶ 386.) According to Plaintiffs, the essential features of the "program" are: (1) targeting Black and Latino drivers for pretextual traffic

---

[1] *See* Compl. ¶¶ 43, 65, 70, 82, 85, 93, 98, 102, 120, 127, 132, 139, 146, 151, 176, 182, 188, 199, 206, 220, 226, 235, 241, 257, 272, 280, 292, 304, 309, 315, 329, 339, 347, 351, 359, 369, 371.

stops throughout Chicago; (2) frequently conducting such stops in predominantly Black and Latino neighborhoods; and (3) imposing quotas for pretextual traffic stops. (*See id.*)

The "mass traffic stop program," Plaintiffs claim, is an outgrowth of CPD's lengthy history of employing unlawful "mass stop tactics."[2] (*See, e.g.*, *id.* ¶¶ 5, 7, 387.) They allege that pretextual traffic stops, carried out on a mass basis, have come to replace investigatory pedestrian stops targeting Black and Latino pedestrians, which have decreased in recent years. (*See id.* ¶¶ 386-419.) The traffic stops, which are concentrated in neighborhoods where most residents are Black and Latino, do little to improve roadway safety or decrease crime. (*See id.* ¶¶ 420-455, 589-607.) Further, Plaintiffs contend, CPD uses quotas to increase the number of traffic stops that are conducted. (*See id.* ¶¶ 456-519.) Plaintiffs present statistical data that they claim shows CPD is more likely to stop, use force against, and search Black and Latino drivers as opposed to White drivers. (*Id.* ¶¶ 520-576.)

On June 26, 2023, Plaintiffs filed their Complaint, naming both the City and CPD as Defendants. Plaintiffs assert four claims of racial discrimination arising under federal and state law. Plaintiffs bring all four counts against the City and bring the Title VI claim in Count III against both the City and CPD. Plaintiffs seek to certify a Rule 23(b)(2) class of all Black and Latino drivers who have been subjected to the "mass traffic stop program" within the past two years, or will be subjected to it in the future. (*Id.* ¶ 376.) They seek declaratory and injunctive relief, including their roadmap for various policy changes (*Id.* at 144-46.) Plaintiffs, however, do not seek any monetary damages.

---

[2] The City objects to Plaintiffs' factually unsupported narrative regarding CPD's history of allegedly unlawful "mass stop tactics" and has, contemporaneously with this Motion, filed a separate motion to strike certain historical allegations pursuant to Federal Rule of Civil Procedure 12(f). *See, e.g.*, *Porter v. Pipefitters Ass'n Loc. Union 597, U.A.*, No. 12-CV-9844, 2013 WL 5162206, at *5 (N.D. Ill. Sept. 12, 2013) (granting motion to strike where plaintiffs' "lengthy recounting of racial discrimination" was irrelevant to race discrimination and other claims "as well as impertinent and inflammatory").

### III.   LEGAL STANDARD

To withstand a motion to dismiss for failure to state a claim under Rule 12(b)(6), a complaint must contain sufficient factual allegations to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This requires that the complaint include factual allegations that plausibly suggest, and are not merely consistent with, an entitlement to relief. *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011). Although all well-pleaded facts are accepted as true, "legal conclusions and conclusory allegations merely reciting the elements of the claim" receive no presumption of truth. *Id.* The requisite level of factual specificity necessary to survive dismissal rises with the complexity of the claims. *Id.*

### IV.   ARGUMENT

#### A.   CPD Must Be Dismissed With Prejudice Because It Is Not A Suable Entity.

Plaintiffs name both the City and CPD as defendants. CPD, however, must be dismissed as a defendant because it is not a suable entity. Whether a party is amenable to suit is a matter of state law. Fed. R. Civ. P. 17(b)(3). "To be sued in Illinois, a defendant must have a legal existence, either natural or artificial." *DeGenova v. Sheriff of DuPage Cty.*, 209 F.3d 973, 977 n.2 (7th Cir. 2000) (quotation marks omitted). It is well established that CPD lacks an independent legal existence, as it is "a city government department completely controlled by the City." *Posey v. Pruger*, 762 F. Supp. 2d 1086, 1089 (N.D. Ill. 2011); *Gray v. City of Chicago*, 159 F. Supp. 2d 1086, 1089 (N.D. Ill. 2001) ("The Police Department is not a suable entity, but merely a department of the City of Chicago which does not have a separate legal existence."); *Chan v. City of Chicago*, 777 F. Supp. 1437, 1442 (N.D. Ill. 1991) ("The Chicago Police Department is also dismissed, with prejudice, because it has no separate legal existence apart from the City of Chicago, and the department is therefore not a suable entity."); *see also Dickerson v. City of*

*Chicago*, No. 21-CV-2955, 2022 WL 3369271, at *1 (N.D. Ill. Aug. 16, 2022) (Rowland, J.) (noting *sua sponte* dismissal of CPD pursuant to a screening order "because it is not a suable entity"). As Plaintiffs acknowledge in their Complaint, "[t]he City operates, manages, directs, controls, and is responsible for CPD." (Compl. ¶ 36.) Accordingly, because CPD is not a suable entity, it must be dismissed with prejudice as a party defendant.

**B.     Plaintiffs' Claims Are Time-Barred To The Extent They Seek Relief Arising From Incidents Outside Of The Applicable Statute Of Limitations.**

Plaintiffs' federal claims brought under Section 1983 and Title VI (Counts I and II) and state-law ICRA claim (Count IV) are time-barred to the extent they seek relief arising from incidents outside of the applicable two-year statute of limitations. *See Davis v. City of Chicago*, 481 F. Supp. 3d 757, 764 (N.D. Ill. 2020) (Rowland, J.) (plaintiffs' Section 1983 claims were subject to a two-year statute of limitations); *Monroe v. Columbia Coll. Chi.*, 990 F.3d 1098, 1101 (7th Cir. 2021) (holding the same Illinois two-year limitations period applies to actions under Title VI); 740 ILCS 23/5(b) (two-year statute of limitations for ICRA claims).

Here, Plaintiffs filed their Complaint on June 26, 2023, which is more than two years after many of Plaintiffs' federal and ICRA claims accrued.[3] For instance, Plaintiff Bell's claims arising from the November 18, 2017, traffic stop incident are time-barred.[4] (Compl. ¶¶ 83-85.) Plaintiff Jefferson's claims arising from the August 12, 2019, traffic stop incident are likewise time-barred. (*Id.* ¶¶ 160-171.) And Plaintiff Beasley's claims arising from the August 2020, September 2020,

---

[3] Civil rights claims "accrue when the plaintiff knows or should know that his or her constitutional rights have been violated." *Wilson v. Giesen*, 956 F.2d 738, 740 (7th Cir. 1992). Similarly, under Illinois law, a general claim "accrues when all elements are present and a party can invoke the aid of the court." *Mizuho Corp. Bank (USA) v. Cory & Assocs., Inc.*, 341 F.3d 644, 650 (7th Cir. 2003).

[4] Plaintiff Bell's state constitutional claim (Count III) is likewise barred to the extent it seeks relief from this November 2017 incident. *See McIntosh v. Kelly*, No. 16-CV-1018-SMY, 2020 WL 1264425, at *4 (S.D. Ill. Mar. 16, 2020) (Illinois constitutional claims seeking equitable relief are subject to five-year statute of limitations).

October 2020, and May 17, 2021, traffic stop incidents are time-barred. (*Id.* ¶¶ 297-315.) Plaintiff Beasley's claims arising from the "Spring/Summer 2021 Traffic Stop," which he claims occurred sometime "approximately between April and July 2021," are time-barred to the extent this incident occurred more than two years before this June 26, 2023 lawsuit was filed. (*Id.* ¶¶ 316-330.) Likewise, Plaintiff Almanza's claims are time-barred to the extent any of the five undated traffic stops in 2021 occurred more than two years before the filing of this lawsuit. (*See id.* ¶¶ 222-223.) To the extent Plaintiffs seek relief arising from incidents outside of the applicable statute of limitations, such claims are time-barred.

### C. Plaintiffs' Federal Equal Protection Claim (Count I) Should Be Dismissed Because Plaintiffs Fail To Plausibly Allege Discriminatory Purpose.

Plaintiffs' federal equal protection claim fails because they have not plausibly alleged that the City acted with the requisite discriminatory purpose in carrying out the traffic stops, i.e., that the City intentionally discriminated against Plaintiffs. Instead, Plaintiffs rely on conclusory "information and belief" allegations, claiming without any factual support that the stops were pretextual. Such allegations are insufficient to state a claim under the Equal Protection Clause.

The Equal Protection Clause prohibits laws from being applied in an intentionally discriminatory manner. *See Whren v. United States*, 517 U.S. 806, 813 (1996). To state a claim for a violation of the Equal Protection Clause, a plaintiff must plausibly allege that the defendants' actions: (1) had a discriminatory effect, and (2) were motivated by discriminatory purpose. *Chavez v. Ill. State Police*, 251 F.3d 612, 635 (7th Cir. 2001); *see also Bond v. Atkinson*, 728 F.3d 690, 693 (7th Cir. 2013) (federal equal protection claim requires intentional discrimination). Discriminatory purpose goes beyond an awareness of the consequences, and instead implies that a decision-maker "selected or reaffirmed a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group." *McCleskey v. Kemp*, 481

U.S. 279, 298 (1987) (quoting *Pers. Adm'r of Mass. v. Feeney*, 442 U.S. 256, 276, 279 (1979)); *see also Bond*, 728 F.3d at 693 (plaintiff must show that defendants adopted a policy "because of, not in spite of or with indifference to" its effect on plaintiffs). Though race need not be the sole factor, it must be a "motivating factor" in the challenged action. *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 265-66 (1977).

Plaintiffs have not adequately alleged discriminatory purpose or intent. The Complaint details more than three dozen traffic stops. (*See* Compl. ¶¶ 39-374.) Yet for the vast majority of the alleged stops, Plaintiffs claim "on information and belief" that the proffered reason for the stop was pretextual. *See supra*, Section I at 1. In several instances, Plaintiffs lump together as many as five stops, claiming on "information and belief," that "each stop was a pretextual traffic stop." (*See id.* ¶¶ 223, 229.) Allegations based upon information and belief, however, do not provide "a license to engage in rank speculation," and they are not acceptable where, as here, plaintiffs fail to state the grounds for their suspicions. *See Brazil v. Fashion Angels Enters.*, No. 17-CV-824, 2018 WL 3520841, at *2 (E.D. Wis. June 29, 2018), *report and recommendation adopted*, No. 17-C-0824, 2018 WL 3518524 (E.D. Wis. July 20, 2018); *Uni*Quality, Inc. v. Infotronx, Inc.*, 974 F.2d 918, 924 (7th Cir. 1992). Missing from Plaintiffs' description of the challenged traffic stops are any factual allegations—such as remarks made by officers, anecdotal evidence, or other insights into officers' decision-making processes—to support a claim that that CPD officers stopped motorists "'because of,' not merely 'in spite of'" their race. *See McCleskey*, 481 U.S. at 298. In repeatedly inserting the threadbare claim that each traffic stop was pretextual, Plaintiffs offer "nothing more than a 'formulaic recitation of the elements' of a constitutional discrimination claim." *Iqbal*, 556 U.S. at 681; *McCauley*, 671 F.3d at 616 (recitation of elements not entitled to a presumption of truth).

In addition, Plaintiffs do not plausibly allege any facts supporting that officers knew they were Black or Latino when the stop was made, precluding any inference that the traffic stop was a pretext for race discrimination. For a number of stops, Plaintiffs allege that the stop occurred in a neighborhood that is predominately Black or Latino, but say nothing about whether the officer knew Plaintiff's race at the time of the stop. In other cases, the stop occurred in a predominately White neighborhood, or a neighborhood whose racial demographic is unstated, but absent from the allegations are any suggestion that the officer had knowledge of the driver's race or ethnicity. (*See, e.g.*, Compl. ¶¶ 86, 103, 122, 129, 140, 147.) For this additional reason, Plaintiffs have failed to adequately allege discriminatory intent. *See Singleton v. City of E. Peoria*, No. 15-CV-1503, 2016 WL 1408059, at *6 (C.D. Ill. Apr. 8, 2016) ("Without an allegation that ties his race to Defendant['s] decision to pull him over, Plaintiff cannot state a plausible equal protection claim.").

Plaintiffs' policy-based allegations are similarly insufficient to plead that CPD officers acted with the requisite discriminatory purpose. The Complaint centers on an alleged "mass traffic stop program that includes targeting Black and Latino drivers for pretextual stops citywide." (*See* Compl. ¶ 386.) Despite Plaintiffs' lengthy pleading, there are no substantive, non-conclusory allegations that identify specific policies compelling officers to target Black and Latino drivers based on their race. Indeed, most of Plaintiffs' allegations do not bear on the discriminatory intent behind the "mass traffic stop program," at all, but rather on: (1) the alleged increase in traffic stops from 2016 onward, (*see id.* ¶¶ 386-419); (2) their claim that traffic stops do not increase roadway safety or reduce crime (*id.* ¶¶ 420-433, 589-607); (3) CPD's alleged use of race-neutral quotas to increase the volume of traffic stops (*id.* ¶¶ 456-519); and (4) statistical data allegedly showing that CPD is more likely to stop Black and Latino drivers instead of White drivers (*id.* ¶¶ 520-576). None of these allegations, however, such as the history of CPD's purported switch from pedestrian

9

to traffic stops, demonstrate that traffic stops are racially motivated. *See Quinn v. Bd. of Educ. of the City of Chicago*, 234 F. Supp. 3d 922, 935 (N.D. Ill. 2017) (generic historical trends were not the type of "specific sequence of events" that might reflect a discriminatory purpose), *aff'd sub nom. Quinn v. Ill.*, 887 F.3d 322 (7th Cir. 2018). And the few allegations that focus on the reasons behind the alleged "mass traffic stop program" are bare, conclusory, and insufficient to allege any increase in traffic stops was driven by race. (*See, e.g.*, Compl. ¶¶ 410 ("Around the same time the number of investigatory stops dropped, CPD began ramping up racially targeted and discriminatory pretextual *traffic* stops."), 419 (claiming that the "true purpose" of traffic stops, "like the purpose of stop-and-frisk," is to harass people of color), 544, 548, 549 (general allegations regarding citywide and "systemic" racial profiling).)

Other than conclusory allegations such as these, there is nothing to indicate that CPD increased traffic stops to purposefully discriminate against Black and Latino drivers. *See Hearne v. Bd. of Educ. of City of Chicago*, 185 F.3d 770, 776 (7th Cir. 1999) (concluding that plaintiffs failed to plausibly allege discriminatory purpose where there was nothing to indicate that the state legislature enacted legislation "specifically because it wanted to disadvantage African Americans"); *Bond*, 728 F.3d at 692 (dismissing sex discrimination complaint challenging deprioritization of domestic-relations crimes because it lacked allegation that such crimes were deprioritized "*because* that would injure women"). To the contrary, Plaintiffs' allegations support that the motivating factor in the alleged increase in traffic stops was crime reduction, not race discrimination. (*See* Compl. ¶¶ 434 ("Defendants have admitted publicly that they have a policy, practice, and custom of saturating higher-crime areas with pretextual traffic stops, supposedly as a way to decrease crime and/or violence in the city."); 436 (traffic enforcement listed as "an express strategy to address crimes or violations"). A failure to achieve the goal of crime

reduction—as alleged by Plaintiffs—does not without more plausibly suggest the City intentionally discriminated against Blacks and Latinos. (*See* Compl. ¶¶ 595-607).

Much of Plaintiffs' Complaint focuses on statistical data supposedly showing that CPD is more likely to stop, search, and subject to force Black and Latino drivers than White drivers. (*See* Compl. ¶¶ 520-588.) But these statistics likewise fail to establish discriminatory purpose. *See Chavez*, 251 F.3d at 647-48 (providing that in general, "statistics may not be the sole proof of a constitutional violation"); *Alston v. City of Madison*, 853 F.3d 901, 907 (7th Cir. 2017) ("[D]isparate impact alone is almost always insufficient to prove discriminatory purpose." (citing *Washington v. Davis*, 426 U.S. 229, 239, (1976)). In *Chavez*, the Seventh Circuit noted that in rare cases, and certain limited contexts such as jury venire, a statistical pattern of discriminatory impact may demonstrate a constitutional violation even in the absence of other non-statistical facts. *See* 251 F.3d at 647-48. But none of these contexts exist here. Without more, Plaintiffs cannot establish a discriminatory purpose behind the alleged "mass traffic stop program."

As Plaintiffs fail to plausibly allege discriminatory purpose, this Court need not address whether they allege discriminatory effect and should dismiss their federal equal protection claim.

 **D.** **Plaintiffs' Title VI Claim (Count II) Should Be Dismissed Because Plaintiffs Fail To Plausibly Allege Discriminatory Purpose, The City Is Not A "Program or Activity," CPD Is Not A Suable Entity, And Plaintiffs Lack Statutory Standing.**

Title VI prohibits discrimination "under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d. Title VI provides for a private right of action as to intentional discrimination only. *H.P. v. Bd. of Educ. of City of Chicago*, 385 F. Supp. 3d 623, 638 (N.D. Ill. 2019). The statute defines a "program or activity" to mean all the operations of certain entities, including: (a) "a department, agency, special purpose district, or other instrumentality of a State or of a local government," or (b) "the entity of such State or local government that distributes such

assistance and each such department or agency . . . to which the assistance is extended, in the case of assistance to a State or local government." 42 U.S.C. § 2000d-4a(1).

As an initial matter, Plaintiffs' Title VI claim must be dismissed for the same reasons set forth in Section III.C, above—they have not plausibly alleged discriminatory intent or purpose.

Moreover, as a municipality, the City does not meet any statutory definition of a "program or activity" under Title VI. *See Hodges v. Pub. Bldg. Comm'n of Chicago*, 864 F. Supp. 1493, 1505 (N.D. Ill. 1994) (dismissing Title VI claims against the City, concluding that it "is not an 'operation' of 'a department, agency, special purpose district, or other instrumentality of a State or of a local government,' or of 'the entity of such State or local government that distributes such assistance,' or of any of the other entities enumerated in § 2000d–4a"); *Knowlton v. City of Wauwatosa*, No. 20-CV-1660, 2023 WL 2480353, at *8 (E.D. Wis. Mar. 13, 2023) (concluding that city did not fall within the statutory definition of a "program or activity"); *see also Schroeder v. City of Chicago*, 715 F. Supp. 222, 225 (N.D. Ill. 1989) (concluding that the City "embodies an entire local government" and therefore did not meet the statutory definition of a "program or activity" under analogous provision of the Rehabilitation Act of 1973). Because the City is a municipality falling outside the scope of Title VI, Plaintiffs' Title VI claim against the City should be dismissed.

In an attempt to plead around the exclusion of municipalities from Title VI, Plaintiffs attempt to bring Count II against a non-suable entity. But as set forth in Section I.A above, CPD is not a suable entity with a legal existence separate from the City. *See, e.g.*, *Gray*, 159 F. Supp. 2d at 1089. Thus, any claim against CPD is merely one asserted against the City and must be dismissed. *See Hodges v. Pub. Bldg. Comm'n of Chicago*, 873 F. Supp. 128, 130 n.3, 132 (N.D. Ill. 1995) (denying motion to reconsider dismissal of plaintiffs' Title VI claims against the City,

where plaintiffs acknowledged that City's planning department was not itself a suable entity pursuant to Rule 17(b)).

Even on the (incorrect) view that the City or CPD is a proper party under Title VI, Plaintiffs' Title VI should be dismissed for lack of statutory standing.[5] To bring an action for intentional discrimination under Title VI, a plaintiff must be an intended beneficiary of, applicant for, or participant in a federally funded program. *Hodges*, 864 F. Supp. at 1506. Plaintiffs allege that the City receives Bureau of Justice Assistance grants and "numerous other grants for various other law enforcement programs." (*See* Compl. ¶ 694.) Plaintiffs summarily claim to be the intended beneficiaries of such financial assistance, but do not explain what such programs are, what CPD does with any of the federal funding it receives through the City, or how they are the intended beneficiaries of such funding. (*See id.* ¶ 695.) Title VI "does not contemplate such an attenuated relationship between federal funding and plaintiff" and requires more than mere contact between a plaintiff and a police department. *Brown-Dickerson v. City of Philadelphia*, No. CV 15-4940, 2016 WL 1623438, at *8 (E.D. Pa. Apr. 25, 2016). Count VI should therefore be dismissed.

    **E.    Plaintiffs' State Constitutional Claim (Count III) Should Be Dismissed Because The Illinois Constitution Does Not Provide Plaintiffs An Independent Cause Of Action And, Even If It Did, Plaintiffs Fail To Plausibly Allege Discriminatory Purpose.**

        **1.    Article 1, Section 2 of the Illinois Constitution does not provide Plaintiffs an independent cause of action for civil rights violations against the City.**

Plaintiffs' state law constitutional claim should be dismissed because Article I, Section 2 of the Illinois Constitution does not expressly provide for a private cause of action, and there is no reason to imply one where federal law provides Plaintiffs with an adequate remedy for any alleged

---

[5] Plaintiffs' statutory standing to bring a private right of action is analyzed under Rule 12(b)(6). *See Conviser v. DePaul Univ.*, 532 F. Supp. 3d 581, 586-87 (N.D. Ill. 2021); *Veljkovic v. Bd. of Educ. of City of Chicago*, No. 20 C 1551, 2020 WL 7626735, at *4 (N.D. Ill. Dec. 22, 2020).

equal protection violations. *See, e.g.*, *Bonnstetter v. City of Chicago*, No. 13-CV-4834, 2014 WL 3687539, at *6 (N.D. Ill. July 24, 2014); *Velazquez v. Williams*, No 14-CV-9121, 2015 WL 4036157, at *3 (N.D. Ill. June 30, 2015) (refusing to recognize an independent cause of action under Article I, Section 2 of the Illinois Constitution); *S.J. v. Perspectives Charter Sch.*, 685 F. Supp. 2d 847, 862 (N.D. Ill. 2010) ("[W]here adequate remedies exist under state common law or federal law for certain causes of action, a plaintiff may not maintain an independent cause of action under the Illinois Constitution.").

In *McIntosh*, the plaintiff brought, *inter alia*, a state law claim against the defendants for violating Article I, Section 2 of the Illinois Constitution, based on allegations that the defendants stopped his vehicle without probable cause and with racial animus. 2020 WL 1264425, at *2. The court *sua sponte* dismissed the plaintiff's state law claim on the grounds that: (1) there was no private cause of action under the Illinois Constitution; and (2) the plaintiff's federal claim under the Fourteenth Amendment's Equal Protection Clause provided an adequate remedy. *Id.* at *4. Similarly, in *Hosick v. Chicago State Univ.*, the court dismissed the plaintiff's due process claim under Article I, Section 2 of the Illinois Constitution because the plaintiff brought an identical claim under the Fourteenth Amendment of the federal Constitution. No. 10-CV-5132, 2011 WL 6337776, at *3 (N.D. Ill. Dec. 19, 2011). Here, in addition to Article I, Section 2 not expressly providing for a private cause of action, Plaintiffs, like the plaintiffs in *McIntosh* and *Hosick*, have brought an identical equal protection claim under the Fourteenth Amendment to the federal Constitution, which if viable provides an adequate remedy for any alleged violations of their rights. (*See* Compl. ¶¶ 676-689.)

Further, it is of no consequence that Plaintiffs seek declaratory and injunctive relief as opposed to damages. Indeed, "[f]ederal courts are permitted to issue declaratory judgments only

14

in cases of 'actual controversy,'" and a "justiciable actual controversy exists only when a private right of action is available." *Mellott v. Sprague*, 334 F. Supp. 3d 916, 922-23 (C.D. Ill. 2017) (rejecting plaintiff's argument that he could seek a declaratory judgment for violations of the Illinois Constitution and concluding that no private cause of action was available under the Illinois Constitution). Accordingly, this Court should dismiss Plaintiffs' Illinois Constitution claim.

### 2.  Plaintiffs fail to plausibly allege discriminatory purpose.

Even assuming that Plaintiffs possessed an independent cause of action under the Illinois Constitution, Count III fails because Plaintiffs have not plausibly alleged that the City acted with the requisite discriminatory intent or purpose in carrying out the traffic stops. Equal protection challenges brought under the Illinois Constitution "are evaluated under the same standards as the federal constitution." *Smith v. Severn*, 129 F.3d 419, 424 n.3 (7th Cir. 1997); *Hosick*, 2011 WL 6337776, at *3 ("Illinois courts collapse the two inquiries into one discussion."). Thus, for the same reasons set forth in Section III.C above, Plaintiffs' equal protection claims brought under the Illinois Constitution should be dismissed because they have not plausibly alleged that the City acted with the requisite discriminatory intent or purpose when effectuating traffic stops.

### F.  Plaintiffs' Claim Under The Illinois Civil Rights Act (Count IV) Should Be Dismissed.

Plaintiffs bring their ICRA claim under both a disparate treatment theory (740 ILCS 23/5(a)(1)) and a disparate impact theory (740 ILCS 23/5(a)(2)). (*See* Compl. ¶¶ 721-722.) As an initial matter, Plaintiffs' ICRA claim under a disparate treatment theory must be dismissed for the same reasons set forth in Section III.C, above: they have not plausibly alleged discriminatory intent or purpose. *See Cary v. Ne. Ill. Reg'l Commuter R.R. Corp.*, No. 19 C 03014, 2020 WL 1330654, at *4 (N.D. Ill. Mar. 22, 2020) (stating that ICRA disparate treatment claim requires challenged action to be motivated by intentional discrimination).

15

Plaintiffs' ICRA claim under a disparate impact theory should be dismissed as well. To state a disparate impact claim under ICRA, plaintiffs must allege that the defendant (1) utilizes "criteria or methods of administration" that (2) "have the effect of subjecting individuals to discrimination because of their race, color, national origin, or gender." 740 ILCS 23/5(a)(2). An ICRA claim under this section requires only disparate impact, regardless of intent. *McFadden v. Bd. of Educ. for Ill. Sch. Dist. U-46*, 984 F. Supp. 2d 882, 890 (N.D. Ill. 2013). ICRA provides a state law remedy that is identical to the federal laws protecting against disparate impact discrimination. *Jackson v. Cerpa*, 696 F. Supp. 2d 962, 964 (N.D. Ill. 2010) (citing *Ill. Native Am. Bar Ass'n v. Univ. of Ill.*, 368 Ill. App. 3d 321, 327 (1st Dist. 2006)). Accordingly, authority concerning those federal civil rights statutes is applicable in interpreting ICRA. *Cent. Austin Neighborhood Ass'n v. City of Chicago*, 2013 IL App (1st) 123041, ¶ 10.

To adequately state a disparate impact claim under ICRA, plaintiffs must identify a specific policy and practice and allege sufficient facts that plausibly demonstrate that the policy or practice caused a "relevant and statistically significant disparity" between members of affected classes. *Adams v. City of Indianapolis*, 742 F.3d 720, 733 (7th Cir. 2014). Here, Plaintiffs fail to allege what specific policies or practices comprise the self-proclaimed "mass traffic stop program," and they have not—and cannot—allege the robust causal connection needed to link such policies and practices to any racial disparities.

       **1.**    **Plaintiffs have not identified what specific policies or practices comprise the "mass traffic stop program" and cause disparate impact.**

An ICRA claim must explain which criteria and methods of administration are at issue. *See Cary*, 2020 WL 1330654, at *4 (dismissing ICRA claim because the plaintiff failed to identify a specific practice that caused the alleged disparate impact). Plaintiffs must "isolate and identify" the specific practices responsible for the discrimination. *See Swan*, 2013 WL 4401439, at *19. The

Seventh Circuit has warned that the failure to require plaintiffs to allege such specific policies or practices would lead to liability for a "myriad of innocent causes that may lead to statistical imbalances." *Puffer v. Allstate Ins. Co.*, 675 F.3d 709, 717 (7th Cir. 2012).

Plaintiffs here cannot "isolate and identify" the specific practices or policies responsible for the alleged discrimination. Instead, Plaintiffs have merely coined the term "mass traffic stop program." (Compl. ¶ 2.) They fail to supply concrete allegations describing how this alleged program functions. Plaintiffs simply describe the "mass traffic stop program" as a "continuation of [CPD's] discriminatory stop-and-frisk program," which according to Plaintiffs, also establishes that the "mass traffic stops are pretextual because their true purpose (like the purpose of stop-and-frisk) is to investigate, harass, and intimidate people of color." (*Id.* ¶¶ 5, 419.)

Nor do Plaintiffs identify what particular policies and practices comprise the so-called "mass traffic stop program" in other than general terms, by, for example, claiming that CPD conducts a high volume of traffic stops in predominantly Black and Latino neighborhoods and imposes traffic stop quotas. (*See id.* ¶¶ 436, 457, 537, 680.) Additionally, Plaintiffs' allegations that CPD has a policy or practice of racially profiling Black and Latino drivers citywide, including in predominantly White neighborhoods, are unsupported and conclusory. (*See, e.g.*, *id.* ¶¶ 544 ("This finding [severe racial disparities] indicates that CPD officers racially profile Black and Latino drivers citywide, and particularly in neighborhoods where most residents are white and officers are likely to perceive Black and Latino drivers as 'out of place.'"), 548 ("suggesting that CPD engages in systematic racial profiling of Black drivers citywide."), 549 ("On information and belief, CPD officers today are more likely to stop Black drivers than white drivers in predominantly white neighborhoods, because of those drivers' race.").) Rather than identifying specific policies or practices, Plaintiffs plead, on information and belief, that from 2021-2023, nearly all of CPD's

17

22 police districts implemented "missions," which Plaintiffs claim "on information and belief . . . are euphemisms for conducting high volumes of pretextual traffic stops." (*Id.* ¶¶ 437, 476.)

It is not enough, however, for Plaintiffs to "point to a generalized policy" that leads to a disparate impact. *Cary*, 2020 WL 1330654, at *4 (quoting *Smith v. City of Jackson, Miss.*, 544 U.S. 228, 241 (2005)). Rather, Plaintiffs are required at the pleading stage to isolate and identify specific practices responsible for the alleged disparate impact. *See Swan v. Bd. Of Educ. of City of Chicago*, 2013 WL 4401439, at *19 (N.D. Ill. Aug 15, 2013). Conclusory allegations will not do. Here, because Plaintiffs have not identified a specific policy or practice, they cannot demonstrate that any such policy caused a relevant and statistically significant disparity between Black and Latino drivers and White drivers.

### 2. Plaintiffs have not alleged a robust causal connection.

Plaintiffs' ICRA claim also fails because Plaintiffs do not plausibly allege how the "mass traffic stop program" caused a disparate impact on Black and Latino drivers in Chicago. Causation "remains a key element of a disparate impact claim," without which there can be no liability. *TBS Grp., LLC v. City of Zion, Ill.*, No. 16-CV-5855, 2017 WL 5129008, at *8 (N.D. Ill. Nov. 6, 2017). The Supreme Court has cautioned that this "robust causality requirement" is necessary to ensure that disparate-impact liability does not "displace valid governmental and private priorities," instead of solely removing unnecessary barriers. *Texas Dep't of Hous. & Cmty. Affs. v. Inclusive Communities Project, Inc.*, 576 U.S. 519, 544 (2015).

In *Inclusive Communities*, the plaintiffs challenged a state agency's selection criteria for allocating the low-income housing tax credits it distributed to developers because those credits went disproportionately toward low-income housing in majority African-American urban areas as opposed to majority white suburban neighborhoods. *See id.* at 524-26. The Supreme Court declined to hold that plaintiffs had established a prima facie case based solely on a statistical

disparity in the allocation of the housing credits. *See id.* at 539-40. Rather, to make out a prima facie case for disparate impact liability, the Court held that, at the pleading stage, the plaintiffs must draw an explicit, causal connection between the challenged policy and the statistical disparities. *Id.* at 543.

As the Court explained, "a disparate-impact claim that relies on a statistical disparity must fail if the plaintiff cannot point to a defendant's policy or policies causing that disparity." *Id.* at 542. This "robust causality requirement ensures that 'racial imbalance . . . does not, without more, establish a prima facie case of disparate impact' and thus protects defendants from being held liable for racial disparities they did not create." *Id.* at 542 (quoting *Wards Cove Packing Co. v. Atonio*, 490 U.S. 642, 653 (1989)). Thus, "[a] plaintiff who fails to allege facts at the pleading stage or produce statistical evidence demonstrating a causal connection cannot make out a prima facie case of disparate impact." *Id.* at 543.

Plaintiffs cannot satisfy the "robust causality requirement" mandated by the Supreme Court. Although Plaintiffs allege Black and Latino drivers are subjected to traffic stops, frisks, and searches more frequently than white drivers, they do not sufficiently allege that these disparities are *caused* by any specific "mass traffic stop" policy or practice, such as the alleged use of quotas, or identify evidence of a causal connection between CPD's policies and these purported disparities. *See TBS Grp.*, 2017 WL 5129008, at *9 (dismissing federal disparate impact claim where defendants failed to allege how a rental property ordinance "will *cause* a racially disparate impact, as distinct from just resulting in disparate impact"). Indeed, there are other plausible explanations for the alleged disparities, such as the demographics of areas where crime occurs most frequently and volume of officers assigned to areas. (*See* Compl. ¶¶ 434-455 (alleging that traffic stops are concentrated in higher-crime neighborhoods where most residents are Black or Latino)). Because

19

"racial imbalance . . . does not, without more, establish a prima facie case of disparate impact,"

Plaintiffs' ICRA claim should be dismissed. *Id.* at 542.

## V. CONCLUSION

For all the reasons set forth above, Defendants' motion to dismiss should be granted.

Dated: September 25, 2023                    Respectfully submitted,

                                             CITY OF CHICAGO

                                    By:  */s/ Michael P. Sheehan*
                                         One of Its Attorneys

Michael P. Sheehan
Allan T. Slagel
Elizabeth A. Winkowski
T. Hudson Cross, IV
TAFT STETTINIUS AND HOLLISTER LLP
111 East Wacker Drive, Suite 2600
Chicago, Illinois 60601
Telephone:     (312) 527-4000
Facsimile:     (312) 527-4011
Email:         msheehan@taftlaw.com
               aslagel@taftlaw.com
               ewinkowski@taftlaw.com
               hcross@taftlaw.com

128867062v11