**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| ERIC WILKINS, MAHARI BELL, ESSENCE JEFFERSON, JOSE MANUEL ALMANZA, JR., and JACQUEZ BEASLEY, | |
| Plaintiffs, | Case No. 23-cv-4072 |
| v. | Judge Mary M. Rowland |
| CITY OF CHICAGO, et al., | Magistrate Judge Beth W. Jantz |
| Defendants. | |

**DEFENDANTS' MOTION TO STRIKE
CERTAIN PARAGRAPHS FROM COMPLAINT**

Defendants City of Chicago (the "City") and Chicago Police Department ("CPD"), by and through their undersigned counsel, and pursuant to Federal Rule of Civil Procedure 12(f), hereby move to strike certain paragraphs from the Class Action Complaint For Declaratory and Injunctive Relief ("Complaint" or "Compl.") [Doc. 1] filed by Plaintiffs Erik Wilkins, Mahari Bell, Essence Jefferson, Jose Manuel Almanza, Jr., and Jacquez Beasley (collectively "Plaintiffs"). In support of this Motion, Defendants state as follows:

**INTRODUCTION**

In this putative class action, Plaintiffs bring federal and state law claims for race discrimination challenging what they refer to as Defendants' "mass traffic stop program." (*See* Compl. ¶ 386.) According to Plaintiffs, the "program" is a concerted effort by Defendants to target Black and Latino drivers for pretextual traffic stops. (*See id.*) Defendants have moved to dismiss the Complaint in its entirety pursuant to Rule 12(b)(6). (*See* Doc. 29.)

Most of the challenged stops occurred in 2019 or later, and Plaintiffs allege that the "mass traffic stop program" did not originate until 2016. Yet many allegations in Plaintiffs' 147-page, 725-paragraph Complaint go back far beyond these time periods—back "decades" or "generations"—and have little or no connection to the traffic stops challenged here. (*See* Compl. ¶¶ 5, 7, 387-406, 461-466, 653.)

Such a pleading runs contrary to Federal Rule of Civil Procedure 8(a)(2), which requires a pleading to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). When a plaintiff fails to comply with Rule 8, this Court is authorized under Rule 12(f) to strike from the pleading "any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). A motion to strike is proper when it serves to remove "unnecessary clutter" to expedite a case. *See Heller Fin., Inc. v. Midwhey Powder Co.*, 883 F.2d 1286, 1294 (7th Cir. 1989). Prejudice for purposes of Rule 12(f) occurs "when the challenged pleading or allegation confuses the issues or is so lengthy and complex that it places an undue burden on the responding party." *Harman v. Gist*, No. 02-cv-6112, 2003 WL 22053591, at *3 (N.D. Ill. Sept. 2, 2003).

These conditions are met here, and, if this Court does not grant Defendants' motion to dismiss, it should strike the paragraphs containing these immaterial and inflammatory allegations pursuant to Rule 12(f) because they unnecessarily confuse the issues in this case and unduly burden and prejudice Defendants in answering and defending themselves in this action.

## ARGUMENT

### I.     Many Of Plaintiffs' Allegations Involve Unrelated Past Conduct.

Plaintiffs contend that, since 2016, Defendants have targeted Black and Latino drivers with pretextual stops on the bases of race and national origin as part of a "mass traffic stop program"—a term they coin in the Complaint. (Compl. ¶ 2). Plaintiffs are five Black and Latino drivers who

2

collectively allege that, as a consequence of the "program," CPD subjected them to 42 traffic stops from late 2017 to the summer of 2023. (*Id.* ¶¶ 39-374.) Lacking any facts to support that CPD acted with a discriminatory purpose, Plaintiffs claim "on information and belief" that the reason for each of these traffic stops was a pretext for race discrimination. (*Id.* ¶¶ 43, 50, 70, 85, 89, 96, 97, 101, 125, 132, 138, 142, 149, 176, 182, 188, 203, 217, 223, 229, 234, 240, 245, 262, 277, 298, 302, 309, 313, 319, 334, 346, 350, 357, 368, 371, 437.)

Rather than point to a specific policy directive regarding traffic stops or any concrete facts supporting an intentionally discriminatory practice, Plaintiffs claim that the "mass traffic stop program" is merely the latest iteration of CPD's long-standing and continuing practice of targeting and harassing Black and Latino Chicagoans. (*See id.* ¶¶ 5, 7.) Plaintiffs describe a "long and sordid history" of discriminatory mass stop tactics dating back "half a century." (*See id.* ¶¶ 5, 7, 387-392.) The Complaint recounts allegations of discrimination from the 1980s, 1990s, and 2000s—most of which Defendants would dispute—that all pre-date the alleged 2016 "mass traffic stop program" and did not even involve traffic stops. (*See id.* ¶¶ 5, 387-406, 461-66.) Plaintiffs further describe features of alleged pedestrian investigatory stop practices that are irrelevant to the traffic stops challenged here. (*See id.* ¶¶ 393-406.) Similarly, they allege that CPD used quotas with respect to investigatory stops from 2013 to 2015, when former CPD Superintendent Garry McCarthy allegedly used CompStat meetings analyzing police data to drive up the number of investigatory stops performed. (*Id.* ¶¶ 461-465.) They also describe events that allegedly increased public scrutiny of CPD's investigatory stop practices. (*See, e.g.*, *id.* ¶¶ 404-405 (describing fatal shooting of Laquan McDonald); 653 (gratuitously describing a rogue officer who, the media reported, "got out of 44 tickets by saying over and over that his girlfriend stole his car").) None of these allegations bear on the claims in this case. These accusations and historical allegations have

3

Case: 1:23-cv-04072 Document #: 30 Filed: 09/25/23 Page 4 of 7 PageID #:223

no concrete connection to Plaintiffs' challenge to traffic stop practices arising after 2016, let alone

to their claims that are not time-barred, which (as explained in the City's motion to dismiss) are

only those claims arising after June 26, 2021. Indeed, Plaintiffs' theory that current practices are a

"replacement" or "continuation" of historical practices is nothing more than a ruse to discredit

Defendants with inflammatory accusations and confuse the issues before the Court.

**II.      This Court should strike from the Complaint inflammatory allegations that are immaterial to Plaintiffs' claims of race discrimination.**

In an effort to buttress their numerous allegations predicated solely on information and

belief, Plaintiffs allege purported incidents of discrimination dating back a half a century to conjure

the theory that today's allegedly discriminatory traffic stops are the result of Defendants' long-

standing practice of discriminating against and harassing Black and Latino Chicagoans. However,

the Federal Rules, in particular Rule 8, do not give them license to clutter their 147-page complaint

with immaterial and inflammatory allegations that have no bearing on their claims of race

discrimination involving present day traffic stops. Accordingly, allegations regarding CPD's

history of alleged discriminatory practices (*id.* ¶¶ 5, 7, 387-406), a quota system under a former

superintendent (*id.* ¶¶ 461-466), and unrelated incidents (*id.* ¶¶ 403-406, 653) should be stricken

pursuant to Rule 12(f).

First, this Court should strike from the Complaint allegations regarding CPD's history of

discrimination that is the alleged precursor to the "mass traffic stop program." Plaintiffs allege

CPD's undue focus on traffic stops did not emerge until after 2016. (*See id.* ¶ 2.) Yet Plaintiffs

allege that, in the 1980s, CPD arrested large numbers of Black and Latino persons for disorderly

conduct, and, in the 1990s, did the same for gang loitering, then pivoted in the 2000s to

investigatory stops and pat downs of Black and Latino pedestrians. (*Id.* ¶¶ 5, 390-393.) According

to Plaintiffs, CPD's unlawful practices date back "decades" or "generations"—at least "half a

4

century"—affecting "hundreds of thousands of people of color, their children, and their grandchildren." (*Id.* ¶¶ 387-389.)

Plaintiffs, however, offer no more than a thematic connection between these allegations. Absent are allegations of common decision- and policy-makers, express statements of substitution of practices, or other allegations reflecting a direct connection. Plaintiffs' allegations go far beyond the "short and plain statement of the claim" required under Rule 8(a)(2) and crowd the 147-page Complaint with unnecessary allegations. Moreover, Plaintiffs' sweeping historical narrative is needlessly inflammatory and prejudicial in its depiction of policing in Chicago over the past 50 years.

Courts within this District routinely strike similar inflammatory and irrelevant allegations that go beyond a "short and plain" statement of the claims. *See, e.g.*, *Porter v. Pipefitters Ass'n Local Union 597, U.A.*, No. 12-cv-9844, 2013 WL 5162206, *5 (N.D. Ill. Sept. 12, 2013) (concluding that "lengthy recounting of racial discrimination going back over a century" was irrelevant to plaintiffs' claims "as well as impertinent and inflammatory"). Indeed, several other plaintiffs have attempted to assert claims of constitutional harms against Defendants by pleading discrete historical events unrelated to the claims at issue, and district courts have rejected this strategy multiple times, striking similar allegations against Defendants. *See, e.g.*, *Cosby v. Rodriguez, et al.*, No. 1:23-cv-02236 (N.D. Ill.) (Pallmeyer, J.), Doc. 32 (July 6, 2023) (granting City's motion to strike certain historical allegations of discrimination from amended complaint alleging § 1983 claims), Doc. 47 (August 10, 2023) (granting in part similar motion as to second amended complaint, and excusing Defendants from answering nearly 30 paragraphs); *Wilger v. Aviles*, No. 1-23-cv-02231 (N.D. Ill.) (Durkin, J.), Doc. 29 (July 28, 2023) (granting City's motion to strike the plaintiff's amended complaint, concluding that "Plaintiff's lengthy recitations of

128948475v6

historic circumstances and unrelated conduct are unnecessary, immaterial, and inflammatory" and plaintiff could "still provide short and plain statement of the basis for his *Monell* claim" without violating Rule 8(a)(2)); *Fouche v. Grossklas*, No. 1:23-cv-02232 (N.D. Ill.), (Durkin, J.), Doc. 28 (July 28, 2023) (granting City's motion to strike similar allegations).

Second, Plaintiffs detail an alleged quota system under former CPD superintendent Garry McCarthy—who has not served as Superintendent since December 2015. They claim that during the height of CPD's pedestrian investigatory stop practices—and particularly from 2013 to 2015— CPD leaders used CompStat meetings to review and analyze the number of investigatory stops performed and encouraged officers to complete more "contact cards" (a form previously used to record pedestrian investigatory stops that has been discontinued). (Compl. ¶¶ 462-465). Plaintiffs' allegations regarding CPD's "history" of using quotas has no relationship to the alleged use of quotas with respect to traffic stops in recent years, and Plaintiffs allege no such connection. (*See id.* ¶¶ 467-519 (discussing at length more recent history and alleging current use of quotas on "information and belief").) These allegations of a quota system relating to pedestrian stops, under a prior administration, are immaterial and should be stricken. *Porter v. Int'l Bus. Machs. Corp.*, 21 F. Supp. 2d 829, 832 (N.D. Ill. 1998) (Williams, J.) (striking as immaterial allegations regarding conduct outside the events that were the subject of the complaint). Forcing the City to address these outdated allegations would only confuse the issues in this case, lead to immaterial and expansive discovery, and result in undue prejudice.

Third, and relatedly, Plaintiffs include in their Complaint allegations regarding the fatal shooting of Laquan McDonald and a rogue officer who repeatedly lied about his own traffic tickets. (*See* ¶¶ 403-405, 463.) Plaintiffs assert that these allegations demonstrate increased public scrutiny of CPD's pedestrian stop-and-frisk practices—not the traffic stops at issue here—and CPD's

6

failure to discipline officers. (*See* ¶¶ 401, 653.) But these allegations do not further Plaintiffs'

claims that, from 2017 to the present, they were pulled over for traffic stops as a pretext for race

discrimination. They are unfairly prejudicial to the City and do nothing but scandalize CPD as an

institution. *See Bd. of Educ. v. Argo Comm. High Sch. Dist. 217*, No. 06-cv-2005, 2006 WL

1896068, *2-3 (N.D. Ill. Jul. 10, 2006) (striking allegations that served "no purpose other than

scandalizing defendants' conduct and converting litigation into theater"). Plaintiffs' allegations

regarding these unrelated incidents should likewise be stricken.

## CONCLUSION

For all these reasons, Defendants respectfully request that this Court enter an order striking

paragraphs 5, 7, 387-406, 461-466, and 653, and granting any other further relief that this Court

deems equitable and just.


Dated: September 25, 2023                    Respectfully submitted,

                                             CITY OF CHICAGO

                                        By:  */s/ Michael P. Sheehan*
                                             One of Its Attorneys

Michael P. Sheehan
Allan T. Slagel
Elizabeth A. Winkowski
T. Hudson Cross, IV
TAFT STETTINIUS AND HOLLISTER LLP
111 East Wacker Drive , Suite 2600
Chicago, Illinois 60601
Telephone:    (312) 527-4000
Facsimile:    (312) 527-4011
Email:        msheehan@taftlaw.com
              aslagel@taftlaw.com
              ewinkowski@taftlaw.com
              hcross@taftlaw.com

128948475v6