**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| ERIC WILKINS, MAHARI BELL, ESSENCE JEFFERSON, JOSE MANUEL ALMANZA, JR., AND JACQUEZ BEASLEY, | ) ) ) ) ) | |
| | ) | Case No. 23-cv-4072 |
| Plaintiffs, | ) ) | |
| v. | ) ) | Hon. Mary M. Rowland |
| CITY OF CHICAGO AND CHICAGO POLICE DEPARTMENT, | ) ) ) | |
| Defendants. | ) ) | |

**PLAINTIFFS' MOTION TO COMPEL**

Pursuant to Federal Rules of Civil Procedure 37(a) and Local Rule 37.2, Plaintiffs Eric Wilkins, Mahari Bell, Essence Jefferson, José Manuel Almanza, Jr., and Jacquez Beasley (collectively, "Plaintiffs"), respectfully request an order compelling Defendants City of Chicago and Chicago Police Department ("Defendants") to respond to four discovery requests: (a) Plaintiffs' Interrogatory No. 6 seeking Defendants' claimed legitimate non-discriminatory justification for the program of mass traffic stops alleged in Plaintiffs' complaint; and (b) Plaintiffs Requests for the Production Nos. 15-17 seeking traffic citation data from red light and speeding cameras, as well as data from traffic sensors in Chicago. As explained further below, each of these discovery requests is relevant to the claims and defenses in this civil rights case, within the meaning of Rule 26(b)(1). Defendants therefore should be required to provide the data and information sought.

1

**Plaintiffs' Claims**

Plaintiffs are five Black and Latino individuals who, collectively, have been subjected to more than 40 traffic stops by Chicago police in the past several years—including four traffic stops in the nine months since they filed their Class Action Complaint for Declaratory and Injunctive Relief ("Complaint" or "Compl.") (Dkt. 1) in June 2023. The Complaint alleges that Defendants' program of subjecting Black and Latino drivers to high volumes of traffic stops, frisks, and searches (the "mass traffic stop program") violates Plaintiffs' rights under the Fourteenth Amendment Equal Protection Clause, Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d, *et seq.*, and the Illinois Civil Rights Act of 2003 ("ICRA"), 740 ILCS 23/5. Plaintiffs seek permanent equitable relief to end Defendants' discriminatory mass traffic stop program.

Plaintiffs allege that Defendants' "pretextual" traffic stops follow a "typical pattern:"

> CPD officers pull over a Black or Latino driver for an alleged minor traffic infraction … [but] the actual purpose of these pretextual traffic stops is not to enforce traffic laws or write tickets (also called "citations"). Rather, CPD officers use the alleged minor traffic violation as an excuse to question and harass the driver about whether they have guns or drugs in the car. … Most of the stops are pretextual because their real purpose is investigatory—to find guns, drugs, or other contraband. In over 99% of all stops, CPD officers do not find guns, drugs, or other contraband, in which case they typically let the driver go, without explanation or apology.

Compl. ¶ 3.

The Complaint alleges that the mass traffic stop program is not aimed at, nor justified by, a goal of enhancing roadway safety, as substantiated by five interrelated sets of facts: (a) Defendants' mass traffic stop program is the historical continuation of other mass stop tactics by CPD, including most recently mass pedestrian stops that were replaced by mass traffic stops in or around late 2015 and early 2016; (b) "Defendants' mass traffic stop pattern is unique among Illinois jurisdictions, and therefore not likely prompted by general changes in driving behavior;"

2

(c) "[m]ost CPD traffic stops since 2016 have not resulted in a citation;" (d) "[m]ost CPD traffic stops since at least 2016 have been made for minor, non-moving violations unrelated to road safety;" and (e) "Defendants have claimed, in published documents and public statements, that they are pursuing their mass traffic stop program for alleged investigatory and crime-deterrence purposes" rather than for the goal of increasing roadway safety. Compl. ¶ 421; *see also id.* ¶¶ 420-55.

The Complaint further alleges that the mass traffic stop program cannot be justified by a public interest in solving or deterring crime, either—despite numerous public statements to the contrary from decisionmakers such as the Mayor and the Superintendent of Police. *Id.* ¶¶ 589-607. CPD's data shows that, of the more than half a million traffic stops that CPD has made annually, only a miniscule percentage resulted in the recovery of any contraband (approximately 0.3%), let alone weapons (0.05%). *Id.* ¶¶ 595-600. Further, Plaintiffs' preliminary statistical analysis shows that Defendants' program of increasing traffic stops (both citywide and in neighborhoods where residents are predominantly Black and Latino) has not decreased rates of the most serious crimes known as index crimes. *Id.* ¶¶ 601-05. Accordingly, Plaintiffs allege, "CPD cannot demonstrate that its mass traffic stop program is necessary to achieve any legitimate, non-discriminatory policing objective (such as reducing index crimes or any other public safety objective)." ¶ 607.

Plaintiffs' factual allegations, described above, place squarely at issue the existence of, motivation behind, and Defendants' alleged justification(s) for the mass traffic stop program.

### Legal Standard

Parties are entitled to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]" Fed. R. Civ. P. 26(b)(1). "Information within this scope of discovery need not be admissible in evidence to be

discoverable." *Id.* "District courts have broad discretion in discovery matters. . . ." *Packman v. Chicago Trib. Co.*, 267 F.3d 628, 646 (7th Cir. 2001); *see also Jakes v. Boudreau*, No. 19-CV-02204, 2021 WL 7543868, at *1 (N.D. Ill. Dec. 2, 2021).

A party may seek an order to compel discovery when an opposing party fails to respond to interrogatories or requests for production of documents. Fed. R. Civ. P. 37(a)(3)(B). For purposes of Rule 37, "an evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer or respond." *Id.* 37(a)(4). "In ruling on motions to compel discovery, courts have consistently adopted a liberal interpretation of the discovery rules." *Charvat v. Valente*, 82 F. Supp. 3d 713, 716-17 (N.D. Ill. 2015), *objections overruled*, No. 12-CV-05746, 2016 WL 98570 (N.D. Ill. Jan. 8, 2016) (quoting *Kodish v. Oakbrook Terrace Fire Prot. Dist.*, 235 F.R.D. 447, 450 (N.D. Ill. 2006); *see also Cannon v. Burge*, No. 05 C 2192, 2010 WL 3714991, at *1 (N.D. Ill. Sept. 14, 2010) ("The federal discovery rules are liberal in order to assist in trial preparation and settlement."). The burden "rests upon the objecting party to show why a particular discovery request is improper." *Kodish*, 235 F.R.D. at 449-50; *see also Jakes*, 2021 WL 7543868, at *1.

<u>**Plaintiffs' Interrogatory No. 6:**</u>
<u>**Defendants' Claimed Legitimate Non-Discriminatory Justification**</u>

On December 7, 2023, Plaintiffs served their First Set of Interrogatories (**Ex. A**). Defendants served their Response to Plaintiffs' First Set of Interrogatories on February 14, 2024, and, after Plaintiffs requested that Defendants provide the signature required by Rule 33(b)(5), Defendants supplemented their interrogatory answers with a verified version on February 27, 2024 (**Ex. B**).

Plaintiffs' Interrogatory No. 6 (Ex. A at 5) asks Defendants to set forth their claimed legitimate non-discriminatory reason(s) for the mass traffic stop program:

> 6. If Defendants contend that the policies and practices that comprise the "mass traffic stop program," as alleged in Plaintiffs' complaint, are justified by a legitimate, non-discriminatory policy objective and are necessary to the attainment

of that objective, explain in detail such objective and why the policies and practices comprising the "mass traffic stop program" are necessary to attain that objective, and identify all documents and communications relating to that objective.

Defendants bear the burden of production under the disparate-impact framework of the Illinois Civil Rights Act (Compl. Count IV) to come forward with a "legitimate non-discriminatory reason for [their] actions[.]" *Swan v. Bd. of Educ. of City of Chicago*, Nos. 13 C 3623, 13 C 3624, 2013 WL 4401439, at *19 (N.D. Ill. Aug. 15, 2013) (citation omitted); *see also Cent. Austin Neighborhood Ass'n v. City of Chicago*, 2013 IL App (1st) 123041, ¶ 10. This is what Interrogatory No. 6 asks for.

But Defendants evaded and misinterpreted Interrogatory No. 6. They responded as follows:

…Defendants do not contend that they engage in the policies and practices that comprise the "mass traffic stop program" as alleged in the Complaint, in particular, engaging in policies or practices of (1) "targeting Black and Latino drivers for pretextual traffic stops citywide," (2) "saturating Black and/or Latino neighborhoods with pretextual traffic stops," and (3) "imposing quotas for pretextual traffic stops."

Ex. B at 13.

Interrogatory No. 6 does not ask Defendants to *admit* the existence of the mass traffic stop program as framed in the Complaint. It asks Defendants to *assume* the existence of the mass traffic stop program, as alleged in the Complaint, and to set forth the justification(s) that Defendants are required to produce at the second step of ICRA's burden-shifting sequence.

During the parties' conference pursuant to Local Rule 37.2, Defendants' counsel stated that Defendants *do* plan to assert a legitimate non-discriminatory justification. Block Ltr. 3/5/24 at 11 (**Ex. C**). However, Defendants have refused to state such justification in response to Plaintiffs' Interrogatory No. 6. O'Brien Ltr. 3/8/24 at 4 (**Ex. D**).

Defendants' evasion of this contention interrogatory is improper and threatens to waste both parties' resources throughout the discovery process. *See, e.g.*, *Roman v. City of Chicago*, No.

5

20 C 1717, 2023 WL 121765, at *8 (N.D. Ill. Jan. 6, 2023) (holding that goals of civil discovery include "elimination of unfair surprise and full and adequate preparation by both sides") (citations omitted).

Unless Defendants fully and directly answer Interrogatory No. 6, Plaintiffs may be required to take discovery, and engage in expert analysis, of potential legitimate non-discriminatory reasons that Defendants have no intention of invoking at summary judgment or trial. For example, in December 2023 the recently-appointed Superintendent of the Chicago Police Department, Larry Snelling, publicly disclaimed any forward-looking intention to use traffic stops to "get guns," and claimed that his strategy now is to focus traffic stops on trying to address carjackings, stolen vehicles and/or promote traffic safety. *See* Jessica Alvarado Gamez, "Routine Traffic Stops Have Resulted in Gun Charges for Thousands of Chicagoans," WBEZ (Mar. 15, 2024). Plaintiffs are entitled to discover whether the purported goals and justifications of Defendants' traffic stop policies and practices—in the past and the present—have been to seize weapons, prevent violent crime generally, address specific types of crimes such as vehicle thefts, promote traffic safety, and/or pursue some other goal. In this way, Plaintiffs will be able to focus their discovery efforts and expert analysis on meeting their burden of establishing that there are equally effective, less-discriminatory alternatives that would accomplish the same goal or goals. *See Swan*, 2013 WL 4401439, at *25.

### Plaintiffs' Requests for Production Nos. 15-17: Automated Traffic Camera Data

While evading Plaintiffs' efforts to deduce their proposed legitimate non-discriminatory justification, Defendants simultaneously have objected as "not relevant" to three of Plaintiffs' Requests for Production ("RFP") seeking automated camera records related to traffic safety— although traffic safety is potentially one of Defendants' proffered legitimate non-discriminatory

6

justifications.[1]  Specifically, Plaintiffs' RFP No. 15 seeks red light camera ticket data; RFP No. 16 seeks speed camera ticket data; and RFP No. 17 seeks traffic sensor data (i.e., data regarding the speed and volume of traffic at various locations throughout Chicago) for the period 2015 to present. Plaintiffs' First Set of Requests for Production is attached as **Ex. E**, and Defendants' responses are attached as **Ex. F**.

If Defendants intend to rely on traffic safety as a proffered legitimate non-discriminatory justification for officer-initiated traffic stops, analysis of the camera data sought in RFP Nos. 15-17 will allow Plaintiffs to determine whether a higher volume of officer-initiated traffic stops in a given neighborhood or over particular time periods actually resulted in lower rates of speeding or red light violations—in other words, whether the mass traffic stop program actually accomplished the proffered goal of promoting roadway safety.

Further, as Plaintiffs explained to Defendants during a Rule 37.2 conference, and later reiterated by letter dated March 5, 2024 (Ex. C at 6), Plaintiffs seek this data to compare the race of individuals subjected to traffic stops initiated by CPD officers to the race of individuals who received citations via automated cameras, to establish the racially discriminatory intent and effect of the mass traffic stop program.  Assuming that officer-initiated traffic stops burden Black and Latino drivers more heavily than camera-issued traffic citations, this evidence will help Plaintiffs establish their disparate treatment claims.

---

[1] It is unclear whether Defendants also intend to claim that the data sought in RFP Nos. 15-17 is disproportionate to the needs of the case.  Although they objected on that basis (Ex. F at 21-24), Defendants' counsel stated during the parties' Rule 37.2 conference that undue burden was not the basis of Defendants' objections to the requests at issue. In any event, because the requested data exists in electronic form in centralized databases, it would not be unduly burdensome for Defendants to provide copies of the electronic databases for the relevant period.  Indeed, the Chicago Department of Transportation visualizes much of the information sought in RFP No. 17 publicly on its "Chicago Traffic Tracker" website, which contains both real-time and historic traffic datasets: https://data.cityofchicago.org/Transportation/Chicago-Traffic-Tracker-Congestion-Estimates-by-Re/t2qc-9pjd/about_data (last visited Mar. 24, 2024).

For these reasons, the data sought in RFP Nos. 15-17 unquestionably is relevant to the parties' claims and defenses in this matter. *See* Fed. R. Civ. P. 26(b)(1); *see also Coleman v. Illinois*, No. 19 C 3789, 2020 WL 5752149, at *3 (N.D. Ill. Sept. 25, 2020) ("Relevance, for discovery purposes, is now gauged in relation to claims or defenses in the action.").

## The Parties' Efforts to Meet and Confer

Counsel for the parties have conferred pursuant to Local Rule 37.2 regarding the discovery requests at issue in this motion. Counsel for the parties met by videoconference for two hours on February 26, 2024, to discuss Defendants' objections to many of Plaintiffs' discovery requests, including Interrogatory No. 6 and RFP Nos. 15-17. Counsel for Plaintiffs followed up by letter dated March 5, 2024 (Ex. C), summarizing and further explaining their need for the information sought in the discovery requests at issue. Defendants responded by letter dated March 8, 2024 (Ex. D), standing on their objections to these four requests. As a result of the parties' conference and exchange of letters, the parties have resolved a number of discovery issues (and are continuing to discuss others in hopes of reaching resolution), but the parties have reached an impasse regarding Plaintiffs' Interrogatory No. 6 and RFP Nos. 15-17.

## Conclusion

Early resolution of the disputes addressed in this Motion will significantly assist the parties to focus their discovery efforts moving forward. Plaintiffs therefore respectfully request that the Court:

(A) Grant this motion;

(B) Order Defendants to proffer their claimed legitimate non-discriminatory justification(s) in response to Plaintiffs' Interrogatory No. 6;

(C) Produce the automated traffic camera data sought in Plaintiffs' RFP Nos. 15-17; and

8

(D) Provide such further relief as the Court deems proper.

Dated: March 27, 2024                                          Respectfully Submitted,


*/s/ Alexandra K. Block*
Alexandra K. Block (ARDC # 6285766)
Joshua M. Levin (ARDC # 6320993)
ROGER BALDWIN FOUNDATION OF ACLU, INC.
150 N. Michigan, Suite 600
Chicago, IL 60601
Phone: (312) 201-9740
Fax: (312) 201-9760
ABlock@aclu-il.org
JLevin@aclu-il.org

Sheldon L. Solow (ARDC # 2673061)
Patrick Derocher (ARDC # 3668891)
Cate Baskin (ARDC # 6343199)
ARNOLD & PORTER KAYE SCHOLER LLP
70 West Madison Street, Suite 4200
Chicago, IL 60602-4231
Phone: (312) 583-2300
Fax: (312) 583-2360

John A. Freedman (*pro hac vice*)
Joshua M. Davis (*pro hac vice*)
Stacey Menjivar (*pro hac vice*)
ARNOLD & PORTER KAYE SCHOLER LLP
601 Massachusetts Ave., N.W.
Washington, D.C. 20001-3743
Phone: (202) 942-5000
Fax: (202) 942-5999

Andrew Hannemann (*pro hac vice*)
Mikaila O. Skaroff (*pro hac vice*)
ARNOLD & PORTER KAYE SCHOLER LLP
Three Embarcadero Center, 10th Floor
San Francisco, CA 94111-4024
Phone: (415) 471-3100
Fax: (415) 471-3400