# Exhibit E

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| ERIC WILKINS, MAHARI BELL, ESSENCE JEFFERSON, JOSE MANUEL ALMANZA, JR., AND JACQUEZ BEASLEY, | ) ) ) ) ) | |
| | ) | |
| Plaintiffs, | ) ) | Case No. 23-cv-4072 |
| v. | ) ) | Hon. Mary M. Rowland |
| | ) | |
| CITY OF CHICAGO AND CHICAGO POLICE DEPARTMENT, | ) ) ) | |
| Defendants. | ) | |

**PLAINTIFFS' FIRST SET OF REQUESTS FOR PRODUCTION TO DEFENDANTS
CITY OF CHICAGO AND CHICAGO POLICE DEPARTMENT**

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, plaintiffs Eric Wilkins, Mahari Bell, Essence Jefferson, José Manuel Almanza, Jr., and Jacquez Beasley, on behalf of themselves and all others similarly situated (collectively, "Plaintiffs"), through their undersigned counsel of record, hereby request that, no later than thirty (30) days from the date of service of this Plaintiffs' First Request for Production of Documents (the "Requests"), defendants City of Chicago and Chicago Police Department ("CPD") (collectively, "Defendants"), produce for inspection and copying the documents, data, and information described herein at the offices of Arnold & Porter Kaye Scholer LLP, 70 West Madison Street, Suite 4200, Chicago, Illinois 60602. Each of the following document requests (each, a "Request") is to be read in accordance with the definitions and instructions that follow.

**DEFINITIONS**

1.      Notwithstanding any definition set forth below, each word, term, or phrase used in the Requests is intended to have the broadest meaning permitted under the Federal Rules of Civil Procedure.

2.      "Document" shall be construed to the fullest and broadest scope of things discoverable under Federal Rule of Civil Procedure 34(a), encompassing material of whatever kind or nature, whether typed, printed, handwritten, or otherwise produced and however stored, printed, recorded, or preserved, including, without limitation, all communications, correspondence, letters, memoranda, meeting minutes, notes, reports, grievances, handbooks, policies, directives, guidelines, contracts, bills, invoices, photographs, calendars, text messages, SMS, instant messages, facsimiles, photocopies, audio or video recordings, and electronic data compilations, including computerized files, computer discs, hard drives, servers, database records, voicemail recordings, electronic mail (e-mail) messages, and electronic calendar invites.

3.      "ESI" means electronically stored information and shall be construed to the fullest and broadest scope of things discoverable under Federal Rule of Civil Procedure 34(a).

4.      "Communication" means any act or instance of transferring, transmitting, passing, delivering, or giving information by oral, written, signed, or electronic means, including, without limitation, in-person discussions, virtual meetings, memos, notes, letters, text messages, SMS, instant messages, facsimiles, electronic mail (e-mail), phone calls, and voicemail.

5.      "Relating to" means referring to, pertaining to, related to, reflecting, concerning, and their variants, and shall be construed to bring within the scope of the Requests any information that explicitly or implicitly comprises, evidences, embodies, constitutes, describes, responds to, reflects, was reviewed in conjunction with, or was generated as a result of, the subject matter of the Requests.

2

6.     "Plaintiffs" means plaintiffs named in the Complaint in the above-captioned action, including Eric Wilkins, Mahari Bell, Essence Jefferson, José Manuel Almanza, Jr., Jacquez Beasley, and those persons yet to be identified who are similarly situated.

7.     "Defendants" means defendants named in the Complaint in the above-captioned action, including the City of Chicago, the CPD, and their directors, officers, employees, affiliates, representatives, advisors, agents, associates, and/or any other person acting for or at the direction thereof, and any such person's subsidiaries, predecessors, and successors.

8.     "Person" means any natural person, corporation, partnership, proprietorship, association, joint venture, group, governmental or public entity, or any other form or organization of legal entity, and all of their directors, officers, employees, representatives, or agents.

## RULES OF CONSTRUCTION

1.     The terms "You" and "Your" shall be construed to include Defendants and their directors, officers, employees, affiliates, representatives, advisors, agents, associates, and/or any other person acting for or at the direction thereof, and any such person's subsidiaries, predecessors, and successors.

2.     The terms "and" and "or" shall be construed either conjunctively or disjunctively as required by the context so as to bring within the scope of a Request any information that might otherwise be considered to be beyond it.

3.     The terms "any," "all," and "each" shall be construed in the broadest sense possible to be consistent with an interpretation that results in a more expansive response.

4.     The use of the singular form of any word shall be construed to include the plural and vice versa.

5.     All phrases following the terms "including" are intended to illustrate the kinds of information responsive to each Request, and shall be construed as "including, but not limited to." Such

3

examples are not intended to be exhaustive of the information sought by the Request and shall not in any way be read to limit the scope of the Request.

6.      The use of a verb in any tense, voice, or mood shall be construed as the use of the verb in all other tenses, voices, or moods, as necessary to bring within the scope of the Request all Documents and Communications that might otherwise be construed to be outside of its scope.

## INSTRUCTIONS

1.      Each Request shall be construed and answered separately and shall not be combined for the purpose of supplying a common response thereto. Each answer shall set forth verbatim the Request to which it responds. The answer to a Request shall not be supplied by referring to the answer to another Request, unless the Request referred to supplies a complete and accurate answer to the Request being answered. The specificity of any Request shall not be construed or understood as limiting the generality or breadth of any other Request.

2.      If You object to any part of a Request, state with particularity both the grounds and reasons for Your objection, specify the portion(s) of the request to which You object, and answer so much of the Request as is not objectionable.

3.      These Requests require You to produce Documents that are in Your physical possession, custody, or control, as well as Documents in the possession, custody, or control of any of Your directors, officers, employees, affiliates, representatives, advisors, agents, associates, and/or any other person acting for or at the direction thereof, and any such person's subsidiaries, predecessors, and successors.

4.      In addition to original and final versions of Documents, any Request for Documents includes a Request for all drafts, alterations, modifications, changes, and amendments of such Documents, as well as copies non-identical to the original in any respect, including any copies bearing non-identical markings or notations of any kind.

4

5.      If any requested Document was, but no longer is, in Defendants' possession, state whether a copy thereof is in the possession, custody or control of some other person, partnership, or corporation.

6.      Defendants are hereby requested to produce in a searchable, electronic format all ESI found to be responsive to these Requests, in accordance with an ESI Protocol to be discussed by the parties and entered by the Court. ESI should be produced in a format compatible with Relativity, in native or near-native format with an associated OCR text file or layer, or associated metadata file that includes all text for the corresponding file. Native format requires production in the same format in which the Document was customarily created, used, and stored by You. Documents that do not exist in a native electronic format or which require redaction of privileged content shall be produced in searchable .PDF format with logical unitization preserved.

7.      Responsive Documents are to be clearly designated so as to reflect their source, owner, and/or custodian.

8.      Each requested Document shall be produced in its entirety. If an identical copy appears in more than one person's files, each of the copies shall be produced or the extracted metadata shall reflect the source, owner and/or custodian for all persons with identical copies. If a Document responsive to any Request cannot be produced in full, it shall be produced to the extent possible with an explanation stating why production of the remainder is not possible.

9.      The instructions relating to assertion of claims of privilege set forth in Federal Rule of Civil Procedure 26(b)(5) are hereby incorporated by reference. With respect to each responsive Document called for by these Requests that is withheld under a claim of privilege or otherwise, state separately for each Document withheld:

      a.  The nature of the privilege or immunity that is being claimed

    b. The type of Document

    c. The general subject matter of the Document

    d. The date of the Document

    e. The custodian from whose possession the Document is being produced

    f. The author(s) of the Document

    g. The addressee(s) and/or recipient(s) of the Document; and

    h. Where not apparent, the relationship of the author(s) and addressee(s) to each other.

10. If there are no Documents responsive to a particular Request, please provide a written response so stating.

11. If You find the meaning of any term in any Request unclear, without waiver of Plaintiffs' rights to seek a full and complete response to the Request, You shall assume a reasonable meaning, state what the assumed meaning is, and respond to the Request according to the assumed meaning.

12. Unless otherwise stated, all Requests herein refer to the period of time from 2016 to the present, and shall include all Documents that relate to or were created during that period, or to events or circumstances during that period, even though dated, prepared, generated, used, or received prior to or after that period.

13. These Requests are continuing in nature as to require supplemental responses in accordance with Rule 26(e) of the Federal Rules of Civil Procedure.

14. These Requests are for discovery purposes only. Plaintiffs do not hereby waive any objections to the introduction of evidence at trial on the subjects covered by these Requests.

**<u>REQUESTS FOR PRODUCTION</u>**

1. All documents identified, referenced, or relied on in preparing Defendants' initial disclosures under Rule 26(a)(1)(A).

2. All documents identified, referenced, or relied upon in preparing Defendants' Responses to Plaintiffs' First Set of Interrogatories.

3. All video or audio recordings of body-worn cameras, in-car cameras, and any other applicable sources relating to or arising out of any traffic stops by CPD of Plaintiffs from 2015 to the present.

4. All records, reports, or other documents relating to or arising out of any traffic stops by CPD of Plaintiffs from 2015 to the present, including but not limited to Traffic Stop reports (also known as "TSSS reports"), Traffic Stop Statistical Study – Driver Information Cards, Traffic Stop Statistical Study Stickers, CLEAR Name Check results, Investigatory Stop Reports, Contact Cards, Arrest Reports, Case Reports, and Service Call Reports.

5. Any of the following documents that exist for each Plaintiff:

   a. Criminal history reports (including arrest reports)

   b. Traffic citations

   c. "Blue Cards"

   d. Vehicle Registration information

   e. Gang Arrest information

   f. Hot desk inquiry searches

   g. Information relating to Complaint Registers or other misconduct complaints filed by Plaintiffs against CPD personnel; and

    h. Office of Emergency Management and Communications (OEMC) records and communications, event queries, and audio recordings.

6. Data relating to CPD's rosters of sworn officers for all shifts from 2015 to the present, including the following information:

    a. Badge Number

    b. First Name

    c. Middle Name

    d. Last Name

    e. Race/Ethnicity

    f. Gender

    g. Birth Year

    h. Salary/Pay Grade

    i. Rank/Title

    j. Unit Assignment

    k. Appoint Date

7. Data relating to daily attendance and assignment sheets for all CPD units from 2015 to the present, including the following information for each officer shift:

    a. Badge Number

    b. First Name

    c. Middle Name

    d. Last Name

    e. Attendance and Assignment Date

    f. Shift Start Time

g. Shift End Time

h. Unit Assignment

i. Watch Number

j. Beat Number

k. Car Number

l. Present for Duty (i.e., whether the officer was present for their assignment that day and/or shift)

m. Any additional information related to an officer's daily attendance or assignment (e.g., if the officer was detailed elsewhere from their usual assignment, on comp time, bike patrol, union business, injured on duty, etc.)

8. CPD's beat maps from 2015 to the present, in shapefile format, and documents sufficient to show the dates that each beat map has been in effect.

9. Traffic and pedestrian stop data that CPD reported to the Illinois Department of Transportation pursuant to the Illinois Traffic and Pedestrian Stop Statistical Study Act, for the period 2015 to present.

10. If different from the previous Request, data relating to every traffic and pedestrian stop CPD made from 2015 to the present, including the following information for each stop:

a. ID number

b. Date

c. Time

d. Location (complete address or latitude and longitude)

e. Reason

f. Officer(s) Badge number

9

g. Officer(s) First Name

h. Officer(s) Middle Name

i. Officer(s) Last Name

j. Civilian First Name

k. Civilian Middle Name

l. Civilian Last Name

m. Civilian Age/Year of Birth

n. Civilian Race/Ethnicity

o. Civilian Gender

p. Indication of whether a citation was issued during the stop. If so:

    i. Citation number

    ii. Citation offense statute

    iii. Citation offense statute description

q. Indication of whether an arrest was made during the stop. If so:

    i. Arrest Report number

    ii. Arrest offense statute

    iii. Arrest offense statute description

r. Indication of whether a search was conducted during the stop. If so:

    i. Type of search (e.g., consent, probable cause, incident to arrest)

    ii. Nature and quantity of any contraband discovered

11. Data relating to every call for service and/or dispatch (including but not limited to computer-aided dispatch [CAD] radio and computer data) from 2015 to the present, including the following information for each call or dispatch:

10

a.      All ID numbers used to identify the incident

b.      All ID numbers used to identify other related incidents

c.      Date

d.      Time of call receipt, dispatch, first officer arrival, and call conclusion

e.      Source of call (e.g. officer self-initiated, 911 call, alarm)

f.      Priority assigned to call

g.      Location (complete address or latitude and longitude)

h.      Incident type as initially classified by call-takers and as determined by responding officers (code and textual description)

i.      Identity of all officer(s) and/or unit(s) dispatched

j.      Number of all officer(s) and/or unit(s) dispatched

k.      All warnings, narratives, and/or remarks recorded by call-taker(s), dispatcher(s), responding officer(s), reviewing officer(s), or other sources

l.      Indication of whether a citation was issued, arrest was made, or force was used during response to the incident. If so:

   i.   Citation and/or arrest number

   ii.  Citation and/or arrest offense statute

   iii. Citation and/or arrest offense statute description

   iv.  Force ID number

12.     Data relating to every arrest CPD made from 2015 to the present, including the following information for each arrest:

   a.   ID number

   b.   Date

11

     c.  Time

     d.  Location (complete address or latitude and longitude)

     e.  Arrest offense crime code

     f.  Arrest offense statute

     g.  Arrest offense statute description

     h.  Officer(s) Badge number

     i.  Officer(s) First Name

     j.  Officer(s) Middle Name

     k.  Officer(s) Last Name

     l.  Civilian First Name

     m.  Civilian Middle Name

     n.  Civilian Last Name

     o.  Civilian Age/Year of Birth

     p.  Civilian Race/Ethnicity

     q.  Civilian Gender

13. Data relating to every use of force by a CPD officer from 2015 to the present, including the following information for each use of force:

     a.  ID number

     b.  Date

     c.  Time

     d.  Location (complete address or latitude and longitude)

     e.  Type of force used

     f.  Reason force was used

12

g. Whether the use of force occurred during a traffic stop, pedestrian stop, or other type of law enforcement encounter. If so:

    i. Call for service and/or dispatch ID number

    ii. Stop ID number

    iii. Citation number

    iv. Arrest report number

    v. ID number for other type of encounter

h. Officer(s) Badge number

i. Officer(s) First Name

j. Officer(s) Middle Name

k. Officer(s) Last Name

l. Civilian First Name

m. Civilian Middle Name

n. Civilian Last Name

o. Civilian Age/Year of Birth

p. Civilian Race/Ethnicity

q. Civilian Gender

r. Civilian Height

s. Civilian Weight

t. Whether civilian was armed

u. Resulting injuries (officer or civilian)

v. Resulting fatalities (officer or civilian)

13

14.     Data relating to every traffic crash in Chicago from 2015 to the present, including the following information for each crash:

    a.  ID number

    b.  Date

    c.  Time

    d.  Location (complete address or latitude and longitude)

    e.  Reason crash occurred

    f.  Resulting damage

    g.  Resulting injuries

    h.  Resulting fatalities

    i.  Officer(s) Badge number

    j.  Officer(s) First Name

    k.  Officer(s) Middle Name

    l.  Officer(s) Last Name

    m.  Civilian First Name

    n.  Civilian Middle Name

    o.  Civilian Last Name

    p.  Civilian Age/Year of Birth

    q.  Civilian Race/Ethnicity

    r.  Civilian Gender

    s.  Indication of whether a citation was issued or arrest made as a result of the accident.

        If so:

        i.  Citation and/or arrest number

14

    ii.   Citation and/or arrest offense statute

   iii.   Citation and/or arrest offense statute description

   iv.   First, middle, and last name of civilian(s) cited and/or arrested

15.    Data relating to every City of Chicago red-light camera citation issued, and every red-light camera violation observed for which no citation was issued, from 2015 to the present, including the following information for each citation:

   a.   ID number

   b.   Date

   c.   Time

   d.   Camera ID number

   e.   Camera location (complete address or latitude and longitude)

   f.   Civilian First Name

   g.   Civilian Middle Name

   h.   Civilian Last Name

   i.   Civilian Age/Year of Birth

   j.   Civilian Race/Ethnicity

   k.   Civilian Gender

   l.   If no citation was issued, the reason or explanation

16.    Data relating to every City of Chicago speed camera citation issued, and every speed camera violation observed for which no citation was issued, from 2015 to the present, including the following information for each citation:

   a.   ID number

   b.   Date

    c.  Time

    d.  Camera ID number

    e.  Camera location (complete address or latitude and longitude)

    f.  Posted speed limit at camera location

    g.  Recorded speed of cited vehicle

    h.  Civilian First Name

    i.  Civilian Middle Name

    j.  Civilian Last Name

    k.  Civilian Age/Year of Birth

    l.  Civilian Race/Ethnicity

    m.  Civilian Gender

    n.  If no citation was issued, the reason or explanation

17.    All raw data collected from traffic sensors in the City of Chicago from 2015 to the present, at the most granular level available. Please include the following information for each sensor:

    a.  Sensor ID number

    b.  Sensor location (address or latitude/longitude)

    c.  Record date

    d.  Hourly vehicle volume

    e.  Hourly vehicle speed

18.    All data, documents and communications created by, distributed by, or in the possession or control of any employee of CPD, the Mayor's Office, or the Office of the Deputy Mayor for Public Safety related to:

16

a. Traffic stop quotas

b. Traffic stop targets, goals, or expectations

c. Contact card targets, goals, or expectations

d. "Blue card" targets, goals, or expectations

e. "Performance" targets, goals, or expectations

f. "Production" targets, goals, or expectations

g. Police "productivity"

h. Police "activity"

i. "High visibility" policing, "beat integrity," "directed patrols," "focused patrols," "Proactive patrols," and other similar terms for "proactive" policing.

19. All reports, notes, agendas, readouts, records, and other documents and communications, related to CompStat meetings relating to the performance or metrics of CPD districts or units with respect to investigatory stops and traffic stops, including, but not limited to "underperforming" units or districts from 2011 to the present.

20. The CPD report titled "Shooting Incidents, Traffic Stops, Recovered Guns and More Summary," including all iterations of the report that have been created and all related documents or communications.

21. CPD's Crime Analysis Report dated September 20, 2021, and all similar or related reports, publications, and other documents.

22. All documents and data relating to the data analysis tool called "Homicides and Shootings in the Top 55 Beats."

17

23. Communications between any CPD supervisory personnel and any other CPD personnel, including their superiors or subordinates, relating to traffic stops from 2015 to the present.

24. All documents relating to any instructions, directions, or guidance given to CPD officers about traffic stops during roll call, including how and where to conduct traffic stops and what the purpose of traffic stops should be.

25. Blank versions of all current and previous CPD officer evaluation forms or systems (paper or electronic) that are used to track individual officers' traffic stops, including but not limited to evaluations of officer "activity," "performance," or "productivity."

26. All reports, presentations, and other documents relating to the CPD's Performance Recognition System ("PRS") and how the PRS is used by CPD supervisors.

27. All documents, including summaries, breakdowns or analyses relating to how individual CPD Districts and units compile and review PRS activity and data, including the frequency with which such compilations and reviews occur and the extent to which those evaluations track traffic stop numbers and outcomes.

28. All communications and other documents relating to PRS activity reviews, including communications from CPD officials to CPD Captains, Lieutenants, Sergeants, and officers regarding the activity of their command, unit, or individual performance, including but not limited to evaluations of traffic stop numbers and outcomes.

29. All documents relating to the efficacy (or lack thereof) of traffic stops in reducing traffic accidents, crime, violent crime, or gun violence, including but not limited to any such documents produced by the CPD audit division or CPD supervisors.

30.    A complete copy of the University of Chicago Crime Lab workforce allocation study that was conducted for CPD, as well as all emails, memoranda, and other documents or communications relating to any CPD responses to the study.

31.    For the period of time subsequent to CPD's decision not to adopt the University of Chicago Crime Lab workforce allocation study, all emails, memoranda, and other documents and communications relating to any steps has CPD taken to conduct (or retain a third party to conduct) a workforce allocation study.

32.    All data, reports, analyses, and other documents relating to CPD deployment decisions and deployment data, including but not limited to where officers are deployed, how that deployment has changed over time, and the number and the extent to which individual officers' or units' traffic stop numbers changed with changes in their deployments.

33.    All documents relating to District Strategic Plans, including but not limited to documents and communications instructing district commanders how to develop such strategic plans and how to measure whether their goals are achieved, and any evaluations regarding whether the desired outcomes of the District Strategic Plans have been achieved.

34.    All CPD documents, including but not limited to memoranda, policies, directives, guidance, training materials, and emails, relating to the various "missions" mentioned in the District Strategic Plans, including but not limited to:

    a. Vehicle theft mission

    b. Direct robbery mission

    c. Enforcement mission

    d. Focused deterrence mission or focused deterrence enforcement action mission

    e. Gun offender registration mission

19

    f.   Shooting mission

    g.   Traffic mission or traffic enforcement mission

    h.   High visibility mission

    i.   License plate reader mission or LPR mission

    j.   Joint POD mission

    k.   POD mission

    l.   Violence suppression mission

    m.   Gang suppression mission or gang mission

    n.   Priority zone mission

    o.   Joint-agency mission or joint mission

    p.   Blue light mission

    q.   Mars light mission

    r.   Theft from auto mission

    s.   Index crime mission

35. All memoranda, emails, directives, policies, and other communications and documents relating to the mission, strategies or goals of CPD's "motor vehicle theft task force" dating from its inception to the present.

36. All memoranda, emails, directives, policies, and other communications and documents relating to the mission, strategies or goals of CPD's "traffic unit" dating from its inception to the present.

37. All memoranda, emails, directives, policies, and other communications and documents relating to the mission, strategies or goals of CPD's "critical incident response team" dating from its inception to the present.

38. All memoranda, emails, directives, policies, and other communications and documents relating to the mission, strategies or goals of CPD's "summer mobile unit" dating from its inception to the present.

39. All memoranda, emails, directives, policies, and other communications and documents relating to the mission, strategies or goals of CPD's "rapid response team(s)" dating from its inception to the present.

40. All memoranda, emails, directives, policies, and other communications and documents relating to CPD's "Top 15 Beats" strategy, including, but not limited to, a list of the beats subject to the strategy, the decision to implement the strategy and the impetus to change from prior strategy, the deployment of personnel and resources to implement the strategy, the analysis and identification of the particular beats subject to the strategy, any change or shift in the composition of the beats, the role of traffic stops in the strategy, and any analysis, assessment, or discussion of the efficacy (or lack thereof) of the strategy.

41. All memoranda, emails, directives, policies, and other communications and documents relating to CPD's "Top 55 Beats" strategy, including, but not limited to, a list of the beats subject to the strategy, the decision to implement the strategy and the impetus to change from prior strategy, the deployment of personnel and resources to implement the strategy, the analysis and identification of the particular beats subject to the strategy, any change or shift in the composition of the beats, the role of traffic stops in the strategy, and any analysis, assessment, or discussion of the efficacy (or lack thereof) of the strategy.

42. All memoranda, emails, directives, policies, and other communications and documents relating to CPD's "top beats" strategy, as described by former Superintendent David Brown and Chief of Patrol Brian McDermott in or around October 2022, including, but not limited

21

to, a list of the beats subject to the strategy, the decision to implement the strategy and the impetus to change from prior strategy, the deployment of personnel and resources to implement the strategy, the analysis and identification of the particular beats subject to the strategy, any change or shift in the composition of the beats, the role of traffic stops in the strategy, and any analysis, assessment, or discussion of the efficacy (or lack thereof) of the strategy.

43. Data relating to all misconduct complaints against CPD personnel arising from or relating to (a) traffic stops, or (b) discrimination based on race, ethnicity and/or national origin, including the following information for each complaint:

    a. Date complaint created

    b. Date of intake

    c. Record ID

    d. Incident origin (e.g., phone, web complaint, in-person, etc.)

    e. Case closed date

    f. Date of incident

    g. Agency (e.g., COPA, CPD)

    h. Category Tier 1 (e.g., Traffic, Excessive Force, Civil Rights Violation)

    i. Allegation

    j. Recommendation

    k. Record status

    l. Finding

    m. COPA recommended finding (where applicable)

44. With respect to CPD General Order G10-01, "Gang Violence Reduction Strategy":

22

    a. All documents relating to the implementation of General Order G10-01 in particular neighborhoods or beats.

    b. Any studies, audits, and similar or related reports, publications, memoranda, and other documents and communications that pertain to the efficacy (or lack thereof) of General Order G10-01.

45. All studies, audits, and similar or related reports, publications, memoranda, emails and other documents and communications relating to CPD's decision to prioritize or focus on specific neighborhoods and beats for traffic stops for the purpose of reducing gang violence, shootings, drive-by shootings, or other crime.

46. Emails, memoranda, and other communications between Deputy Chief Frederick Melean and other CPD employees relating to traffic stops or traffic missions, including but not limited to traffic stops and traffic missions in Chinatown.

47. All documents relating to policies, practices, procedures, guidelines, directives, general orders, or special orders relating to:

    a. Conducting traffic stops, whether for the purpose of enforcing traffic laws or for other purposes, such as investigating criminal activity unrelated to an alleged traffic violation.

    b. Measures to prevent discrimination based on race or ethnicity, racial or ethnic profiling, biased-based policing, racial or ethnic disparities, or racial or ethnic prejudice in policing.

    c. Investigative and disciplinary procedures for addressing misconduct complaints alleging that CPD officers have committed the types of discrimination listed in (b) above.

23

48. All documents—including, but not limited to, memoranda, meeting minutes, meeting notes, and emails—created or distributed, or both, by any CPD employee regarding the evaluation of CPD officers on the basis of their traffic stops.

49. The following CPD training materials regarding traffic stop data collection, review, analysis, and reporting, and all other training materials relating to traffic stops, as well as all documents relating to how officers are evaluated for compliance with the same:

a. ICVS_Policy_1_IN-CAR_VIDEO_SYSTEMS_R

b. In-Car_Video_System_Hour_2_Reformatted

c. Patrol_Procedures_LP_Hrs_8-11_2017_R

d. Patrol_Procedures_PPT_Hr_10_2019_

e. Police_Community_Relations_LP_Hrs_1-10_FEB_2022_

f. Police_Community_Relations_LP_Hrs_1-10_MAR_2021_

g. Traffic Stop Statistical Study, Profiling, Courtesy and Demeanor: A Two Hour Review

h. Vehicle Stops and Occupant Control – Chicago Police Department Basic Recruit Training – Hour 2 of 28

i. Vehicle Stops and Occupant Control: Racial Profiling

50. All documents relating to the training of CPD officers with respect to prohibiting and preventing discrimination based on race or ethnicity, racial or ethnic profiling, biased-based policing, racial or ethnic disparities, or racial or ethnic prejudice in policing, including but not limited to handouts, PowerPoints, presentations, and documents provided to CPD officers.

24

51. All documents relating to investigative and disciplinary policies and procedures for CPD officers, supervisors, and units when misconduct complaints are filed against them regarding traffic stops.

52. All organizational charts for all divisions, branches, and other components of CPD.

53. All reports, audits, publications, analyses, memoranda, and similar documents or evaluations relating to:

   a. Discrimination by CPD officers based on race or ethnicity, racial or ethnic profiling, biased-based policing, racial or ethnic disparities, or racial or ethnic prejudice in policing.

   b. The racial and ethnic distribution of individuals who are the subject of traffic stops in Chicago.

   c. The racial and ethnic distribution of individuals whose traffic stops result in citation or arrest in Chicago.

   d. Complaints against CPD officers arising from traffic stops.

54. All documents and data relating to training CPD officers on the Illinois Traffic and Pedestrian Stop Statistical Study Act, 625 ILCS 5/11-212, and related requirements for documenting traffic stops, including but not limited to the content of the training and training attendance and completion records.

55. All documents and data related to CPD's policies and practices for monitoring, auditing, and assessing officers' compliance with requirements for documenting traffic stops.

56. All documents or data showing the rate of CPD officers' compliance (or lack thereof) with requirements for documenting traffic stops.

57.     Documents sufficient to identify the names, job titles, and job descriptions of all individuals whom Defendants consider to be officials with final policymaking authority for Defendants' policies and practices related to traffic stops, including traffic stop quotas and/or pretextual traffic stops (using traffic stops not for the purpose of enforcing traffic laws but for other purposes, such as investigating criminal activity unrelated to an alleged traffic violation).

58.     The below CPD policies and activity tracking forms, in addition to all similar or related reports, publications, and other documents:

a.  G01-08 (CompStat and Command Engagement)

b.  G01-09 (Supervisory Responsibilities)

c.  G10-01 (Gang Violence Reduction Strategy)

d.  S03-03-03 (Watch Operations Lieutenant)

e.  S04-14-09 (Illinois Traffic and Pedestrian Stop Statistical Study)

f.  S04-13-09 (Investigatory Stop System)

g.  S11-02 (Field Training and Evaluation Program)

h.  E05-01 (Performance Evaluations of All Sworn Department Members Below the Rank of Superintendent)

i.  E05-02 (Performance Recognition System)

j.  D21-09 (Performance Evaluations System – Pilot Program)

k.  Activity Tracking Forms CPD 21.318, 21.320, 21.328, 21.450, 21.460, 21.636, 21.641, 21.642, 21.947, 22.101, 22.103, 22.308, 42.506, 62.217, 62.357, and 62.358

l.  Traffic Stop Statistical Study Driver Information Card

m.  Traffic Stop Statistical Study Sticker

n. Investigatory Stop Report

o. Investigatory Stop Receipt

59. The complete versions of all email chains referenced in the following report: Free 2 Move Coalition, "A New Vehicle for 'Stop and Frisk': Update," May 2023 (https://www.impactforequity.org/wp-content/uploads/2023/05/IFE_Traffic-Stop-Report-Update_F.pdf).

60. All notes, agendas, readouts, and related or similar documents relating to meetings between any current or former Superintendent(s), interim or permanent, of CPD, and the offices of Mayors Rahm Emanuel, Lori Lightfoot, and Brandon Johnson or their respective Deputy Mayor for Public Safety, from 2011 to the present, related to CPD's investigatory stop practices or CPD's traffic stop practices.

61. All documents and communications within the offices of Mayors Rahm Emanuel, Lori Lightfoot, and Brandon Johnson or the Office of the Deputy Mayor for Public Safety, from 2011 to the present, related to CPD's investigatory stop practices or CPD's traffic stop practices.

62. All public statements, including but not limited to testimony, press conferences, press releases, and social media posts, by any current or former CPD Superintendent, Deputy Superintendent, Chief of Patrol, or other supervisor of CPD, relating to traffic stops and/or officer "productivity," "activity" or "proactive policing" or similar.

63. All public statements, including but not limited to testimony, press conferences, press releases, and social media posts, by any current or former Mayor, Deputy Mayor for Public Safety, Assistant Deputy Mayor for Public Safety, or other equivalent supervisor, relating to traffic stops and/or officer "productivity," "activity" or "proactive policing" or similar.

64.     Presentations, dating to the summer of 2021, from the Assistant Deputy Mayor for Public Safety to Mayor Lori Lightfoot, relating to the "Summer Safety Strategy Zone Weekend Summary," and all similar or related presentations, reports, and other documents given to Mayors Rahm Emanuel, Lori Lightfoot, and Brandon Johnson, from 2011 to the present.

65.     The below documents associated with the ongoing litigation in *Paz v. City of Chicago*, 2021L000514 (Cook Cty. Cir. Ct.) ("Paz litigation"):

a.  Emails and other communications between Lt. Paz and then-Deputy Superintendent Barb West, dated in and around September 2020, outlining Paz's concerns with the Community Safety Team ("CST") quota policy, and all similar or related emails and other communications between Paz and/or West and other CPD supervisors and managerial staff.

b.  The letter Lt. Paz sent to other supervising officers regarding Deputy Chief Michael Barz's conduct, dated on or about September 25, 2020, and all related or similar documents and communications, including, but not limited to, emails and other conversations.

c.  Emails and other communications between Lt. Paz and Deputy Chief Barz, dated in and around September 2020, outlining Paz's concerns with the CST quota policy, and all similar or related emails and other communications between Paz and/or Barz and other CPD supervisors and managers, except to the extent that Defendants have produced these in connection with sub-paragraph a, *supra*.

66.     All notes, agendas, memoranda, emails, or other documents relating to the following communications, including documents sufficient to identify all recipients of the communication:

28

a. Any meeting and other instances wherein Deputy Chief Michael Barz pressured CPD supervisors on the Community Safety Team to increase traffic stops and arrests

b. Any roll call that occurred in the Second District, on or about November 17, 2020, in which Watch Operations Lieutenant ("WOL") Robert Vanna threatened officers who did not increase their traffic stops with adverse employment consequences

c. An email sent from the Deputy Chief, Office of Operations, on or around December 6, 2020, relating to traffic stops

d. An email sent from Evelynna T. Quarterman, Commander for the Third District , with the subject header, "Traffic Missions as a crime reduction strategdy" [sic]

e. Any other email, memoranda, or other communication sent by a Superintendent, Deputy Chief, or District Commander relating to traffic stops

67. For all officers who received the communications described in Request 66, all documents subsequent to the communications and/or meetings that pertain to (1) traffic stops the officer(s) made and/or (2) any discipline or adverse employment actions that those officers experienced.

68. All records, emails, memoranda, and other documents and/or communications, to or from Michael Barz relating to traffic stops.

69. All documents that you may use to support your defenses in this action.

December 7, 2023                               Respectfully submitted,

                                              /s/ Alexandra K. Block
                                              Alexandra K. Block (ARDC # 6285766)
                                              Joshua M. Levin (ARDC # 6320993)
                                              ROGER BALDWIN FOUNDATION OF ACLU, INC.
                                              150 N. Michigan, Suite 600
                                              Chicago, IL 60601

29

Phone: (312) 201-9740
Fax: (312) 201-9760
ABlock@aclu-il.org
JLevin@aclu-il.org

Sheldon L. Solow (ARDC # 2673061)
Patrick Derocher (ARDC # 3668891)
Cate Baskin (ARDC # 6343199)
ARNOLD & PORTER KAYE SCHOLER LLP
70 West Madison Street, Suite 4200
Chicago, IL 60602-4231
Phone: (312) 583-2300
Fax: (312) 583-2360
Sheldon.Solow@arnoldporter.com
Patrick.Derocher@arnoldporter.com
Cate.Baskin@arnoldporter.com

John A. Freedman (*pro hac vice*)
Joshua M. Davis (*pro hac vice*)
Stacey Menjivar (*pro hac vice* forthcoming)
ARNOLD & PORTER KAYE SCHOLER LLP
601 Massachusetts Ave., N.W.
Washington, D.C. 20001-3743
Phone: (202) 942-5000
Fax: (202) 942-5999
John.Freedman@arnoldporter.com
Joshua.Davis@arnoldporter.com

Andrew Hannemann (*pro hac vice* forthcoming)
Mikaila O. Skaroff (*pro hac vice* forthcoming)
ARNOLD & PORTER KAYE SCHOLER LLP
Three Embarcadero Center, 10th Floor
San Francisco, CA 94111-4024
Phone: (415) 471-3100
Fax: (415) 471-3400
Andrew.Hannemann@arnoldporter.com
Mikaila.Skaroff@arnoldporter.com

30

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on December 7, 2023, the foregoing *Plaintiffs' First Set of Requests for Production to Defendants City of Chicago and Chicago Police Department* were served on the following counsel of record by E-mail:

Michael P. Sheehan
Allan Slagel
Elizabeth A. Winkowski
T. Hudson Cross, IV
Taft Stettinius & Hollister LLC
111 East Wacker Drive, Suite 2600
Chicago, IL 60602
msheehan@taftlaw.com
aslagel@taftlaw.com
ewinkowski@taftlaw.com
hcross@taftlaw.com

/s/ *Alexandra K. Block*
Alexandra K. Block

31