# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ERIC WILKINS, MAHARI BELL, ESSENCE JEFFERSON, JOSE MANUEL ALMANZA, JR., and JACQUEZ BEASLEY,<br><br>*Plaintiffs*,<br><br>v.<br><br>CITY OF CHICAGO,<br><br>*Defendant*. | Case No. 23-cv-4072<br><br>Judge Mary M. Rowland<br><br>Magistrate Judge Beth W. Jantz |

## DECLARATION OF SGT. JOE A. HOLT

I, Sergeant Joe A. Holt, declare as follows:

1. I am over 18 years of age, of sound mind, and am otherwise fully capable of making this declaration. All statements made in this declaration are within my personal knowledge. If called upon to do so, I would testify that the following statements are true.

2. I make this declaration in support of Defendant City of Chicago's Response in Opposition to Plaintiffs' Motion to Compel.

3. I am employed by the Chicago Police Department ("CPD") as a Sergeant and Legal Affairs Officer within CPD's Office of Legal Affairs ("OLA").

4. I have been advised that Plaintiffs seek to enlarge the number of custodians designated for ESI collection. I have assessed the scope of the additional designations, if permitted by the Court. Inclusion of the following CPD personnel as custodians of electronically stored information ("ESI") would result in hundreds of additional custodians:

   (a) every CPD Officer involved in Plaintiffs' 48 traffic stops;

  (b)  all intermediate supervisory personnel between each CPD Officer involved in each of the 48 traffic stops and their District Commander (including all Field Training Officers ("FTO"), Sergeants, Lieutenants, and Captains at the time of the stop), which at a minimum totals 96 officers, excluding FTOs and captains.

  (c)  all commanders of CPD's 22 districts going back to 2016, which totals nearly 100 District Commander custodians; and

  (d)  all commanders or leadership personnel of "specialized units" including the citywide Community Safety Team, Motor Vehicular Hijacking Team, Traffic Unit, and Summer Mobile Unit, as well as all Rapid Response Teams and Tactical Teams that exist within each of CPD's 22 districts, going back to 2016 (or the inception of these units).

  5.  For example, the Community Safety Team, Traffic Unit, and Summer Mobile Unit each have, at minimum, a sergeant, lieutenant, and commander within their leadership structure, adding at least nine custodians. There are five Motor Vehicular Hijacking Teams that report through the Bureau of Detectives ("BOD") chain of command, including the BOD Area Sergeant, BOD Area Robbery Lieutenant, and BOD Area Commander, adding an additional 15 custodians.

  6.  Within the Bureau of Patrol, there are 22 district Tactical Units, each with its own lieutenant, and 66 Tactical Teams, each with its own sergeant. The leadership personnel for Tactical Teams would thus add an additional 88 custodians based on current staffing.

  7.  Similarly, there is a Rapid Response Team on each of the 3 watches in each of the 22 districts, each with its own leadership structure typically including a sergeant, lieutenant, and

captain. The current leadership personnel for Rapid Response Teams would therefore represent 198 custodians.

8. The numbers in Paragraphs 5 through 7 above are approximate based on current staffing and would be even greater if historical staffing going back to 2016 is taken into account.

9. The process of searching hundreds of hard drives for CPD employees would be burdensome. The custodians include a combination of current and former officers. The process of determining the specific hard drives accessed for hundreds of officers would be a time-consuming and cumbersome process. Patrol officers, for instance, are not assigned personal computers but rather utilize common computers within a district. For former officers, who may have been provided a personal computer, the typical practice is for CPD's technology unit to wipe data from hard drives when CPD employment terminates and then to recirculate the computers for re-use.

10. CPD's efforts to respond to Plaintiffs' discovery requests will take multiple forms. Once agreed upon, or directed by the Court, CPD will conduct a structured ESI search as to the disputed issues. CPD has already commenced collection of ESI for ESI issues not in dispute and produced documents responsive to Plaintiffs' discovery requests. These efforts have included contacting each current District Commander requesting the collection of documents, including from shared network drives, responsive to Plaintiffs' Request Nos. 23, 28, 32, 34, and 48 (seeking, among other things, communications between CPD supervisory personnel relating to traffic stops and documents and communications relating to CPD's Performance Review System, deployment decisions, District to Strategic Plans, and "missions").

11. CPD does not routinely communicate policies and directives, or information concerning particular traffic stops, to individual patrol officers via text message. CPD policies are typically posted on the Department intranet, which is available to all officers.

12. In terms of the burdens presented by an ESI collection of CPD emails, CPD's Freedom of Information Act ("FOIA") Unit searched the CPD emails of former Chief of Patrol Brian McDermott, who served in that position for the period of July 15, 2020 until his retirement on December 21, 2023, for certain search terms for the time period January 1, 2016 through May 28, 2024.

13. Plaintiff proposed searching custodian emails for the term "traffic." Applying the "traffic" term to Chief McDermott's emails for the above time period resulted in 33,507 emails hitting on the term "traffic." Whether such emails are actually responsive to the matters at issue in this lawsuit challenging traffic stop policies and practices is unclear without further review.

14. The FOIA Unit also searched former Chief of Patrol McDermott's CPD emails for the same period using the City's proposed "traffic stop(s)," "activity," and "top 55 beats" search terms with limiting connectors, which resulted in a collection of 10,981 emails, with results broken down as follows:

| Proposed Term | Number of Results (Hits) |
| --- | --- |
| "Traffic Stop" NEAR(5) (Policy OR Policies) | 14 |
| "Traffic Stop" NEAR(5) (increas* OR reduc*) | 2 |
| "Traffic Stop" NEAR(25) (Violence OR shootings) | 187 |
| "Traffic Stop" NEAR(25) (goal* OR quota*) | 13 |
| "Traffic Stop" NEAR(25) (strateg* OR proactive) | 2019 |
| "Traffic Stop" NEAR(25) mission | 123 |
| "Traffic Stop" NEAR(25) stop AND NEAR(2) FRISK | 5 |
| "Traffic Stop" NEAR(25) STOP AND NEAR(2) PEDESTRIAN | 8 |

4

| | |
|---|---|
| "Traffic Stops" NEAR(5) (Policy OR Policies) | 14 |
| "Traffic Stops" NEAR(5) (Increas* OR Reduc*) | 61 |
| "Traffic Stops" NEAR(25) (Violence OR Shootings) | 340 |
| "Traffic Stops" NEAR(25) (goal* OR quota*) | 31 |
| "Traffic Stops" NEAR(25) (strateg* OR proactive) | 2276 |
| "Traffic Stops" NEAR(25) mission | 519 |
| "Traffic Stops" NEAR(25) stop AND NEAR(2) Frisk | 14 |
| "Traffic Stops" NEAR(25) STOP AND NEAR(2) PEDESTRIAN | 13 |
| activity NEAR(25) TSS* | 1977 |
| activity NEAR(25) BLUE AND NEAR(2) CARD* | 9 |
| activity NEAR(25) Traffic AND NEAR(2) Stop* | 1015 |
| "top 55 beats" NEAR(10) Traffic AND NEAR(2) Stop* | 8 |
| "top 55 beats" NEAR(10) Blue AND NEAR(2) Card* | 0 |
| "Traffic Stops" NEAR(25) "Summer Mobile" | 215 |
| "Traffic Stops" NEAR(25) "Community Safety" | 1326 |
| "Traffic Stops" NEAR(25) "Critical Incident" | 192 |
| "Traffic Stops" NEAR(25) (SMU OR CST OR CIRT) | 600 |
| Stop NEAR(10) "Top Beats" | 0 |
| **Total Hits:** | **10981** |

15.     Based on past requests, trained FOIA officers within CPD's FOIA Unit have found that it takes at least three minutes to review one page of responsive documents, exclusive of attachments. Working under an operating assumption of one page for each email containing the

5

term "traffic" as proposed by Plaintiffs, a search for 30,000 pages of responsive documentation would require at least 1,500 hours, or a minimum of nearly 37.5 weeks to review (at 40 hours per week), which is not inclusive of the time necessary to retrieve the documents, to the exclusion of all other tasks. While a technology assisted review may reduce this time, the documents would still need to be manually reviewed to ensure protection of sensitive or confidential law enforcement and juvenile information.

[*Signature on following page.*]

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated: June 12, 2024

_____
Sgt. Joe A. Holt

133422191v3