IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ERIC WILKINS, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> CITY OF CHICAGO, <br><br> Defendant. | Case No. 23-cv-4072 <br><br> Judge Mary M. Rowland <br><br> Magistrate Judge Beth W. Jantz |

### DEFENDANT CITY OF CHICAGO'S MOTION FOR PROTECTIVE ORDER TO QUASH NOTICE OF DEPOSITION OF SUPERINTENDENT SNELLING

Defendant City of Chicago (the "City"), pursuant to Federal Rules of Civil Procedure 26(c)(1), respectfully moves for entry of a protective order quashing the Notice of Videotaped Deposition issued by Plaintiffs for Larry Snelling ("Superintendent Snelling" or "Superintendent"), Superintendent of the Chicago Police Department ("CPD" or the "Department"), and, in support thereof, states as follows:[1]

### BACKGROUND

The "superintendent of the Chicago police is a busy official who should not be taken away from his work to spend hours or days answering lawyers' questions unless there is a real need." *Olivieri v. Rodriguez*, 122 F.3d 406, 409 (7th Cir. 1997). Superintendent Snelling leads and

---

[1] **Certification of Local Rule 37.2 Conference:** On July 3, 2025, Plaintiffs issued a Notice of Videotaped Deposition of Larry Snelling. *See* Notice of Deposition, attached hereto as **Exhibit 1**. Pursuant to Local Rule 37.2, counsel for the parties have met and conferred regarding Superintendent Snelling's deposition since August 1, 2025. *See* initial email string between the parties, attached hereto as **Exhibit 2**. Additionally, counsel for Plaintiffs (Alexandra Block) and counsel for the City (Michael Sheehan) met via Zoom on October 6, 2025 and conferred regarding the deposition schedule in this matter. Despite the parties' good faith attempts to resolve their differences, they were unable to reach an accord as to Superintendent Snelling's deposition. *See* Dkt. 180 (Joint Status Report) at ¶ 8; Dkt 199 (Joint Status Report).

manages the second-largest police department in the nation, with a police force of over 11,500 officers. The demands on his time are rigorous and constant, leaving him little personal time even outside of formal office hours. In a typical week, between 25-30 hours are taken up on his calendar with regular, set meetings. (Declaration of Sergeant Alice Yau at ¶ 3, **Exhibit 3** hereto.) These include, for example, meetings with the Mayor's Office, the Chiefs of CPD's Bureaus and Offices, Office of Constitutional Policing and Reform, and CompStat meetings, which are necessary for the Superintendent to make daily operational decisions for the Department, as well as to meet ongoing deadlines on matters including the City's compliance with various Consent Decree requirements. (*Id.*) In addition to pre-scheduled meetings, every week, several hours of meetings are added to the Superintendent's calendar to address operational concerns relating to spontaneous events in the city that require a police response. (*Id.* at ¶ 4.) The hours for these meetings can be highly variable based on circumstances which are, by their nature, constantly changing. (*Id.*) Outside of the Superintendent's formal schedule, he often visits officers on the street on the way home from work, takes calls from home in the evenings, and works many weekends. Typically, Superintendent Snelling works over ten hours per workday in addition to varying hours on the weekend. During the first quarter of 2026, in addition to the above, the Superintendent's time will be focused on preparing CPD's summer plan, CPD's plan for Consent Decree compliance over the next twelve months, and making decisions on promotions so that those officers will be placed in advance of the summer.

In view of the substantial demands on Superintendent Snelling's time, the proffered bases for seeking his deposition are weak and insufficient to establish a real need for his deposition. Asked to explain the necessity for his deposition, Plaintiffs were only able to point to his position as the "leader of the City's and CPD's teams responsible for devising and/or implementing the

mass traffic stop program." *See* Ex. 2 (email from A. Block to M. Sheehan). Plaintiffs have not, at any point, identified information relevant to their claims arising from CPD's traffic stop practices which is unique to Superintendent Snelling or could not be obtained from the voluminous documents or dozens of depositions already completed or scheduled in this case. Indeed, Plaintiffs have previously proposed a stipulation in lieu of Superintendent Snelling's deposition (Dkt. 180 at ¶ 8), underscoring that Plaintiffs could obtain the information they seek through discovery methods short of a deposition.

The City has produced an extraordinary amount of discovery in this case. To date, it has produced over 1.5 million pages of documents in response to Plaintiffs' discovery requests. These productions have included, among other things, CPD directives and training materials relevant to Plaintiffs' claims; documents relating to CPD's policing strategies, including, by way of example, reports of discussions at CompStat meetings and data generated for those meetings, District Strategic Plans and reports relating to implementation of those plans, memoranda detailing district-, area-, and department-level strategies for reducing crime, including missions and responses to particular crime events; and documents relating to certain CPD units and teams which engaged in traffic stops as one of their policing activities. As part of its document production effort, the City has collected, reviewed, and produced responsive ESI from 142 custodians, including every CPD superintendent, first deputy superintendent, and chief of patrol from October 2015 through the current administration, as well as high-ranking command staff of certain CPD units and teams and commanders of a subset of CPD districts over the same time period. Relative to Superintendent Snelling specifically, the City has collected, reviewed, and produced responsive ESI from his CPD

3

email account during his time as Superintendent and District 7 Commander, as well as having reviewed his CPD-issued mobile device during his time as Superintendent.[2]

Since September 2025, the parties have been actively engaged in oral discovery, with twenty-four depositions completed and another sixteen depositions scheduled[3] through February 2026. Relevant to this motion, Plaintiffs have deposed or will depose key members of Superintendent Snelling's senior leadership team during his tenure as superintendent (September 2023 through the present). Specifically, Plaintiffs have deposed former First Deputy Superintendent Yolanda Talley and former Chief of Patrol Brian McDermott, and will depose current Chief of Patrol Jon Hein on January 27, 2026. Further, Plaintiffs have deposed or will depose several command-level CPD personnel who have served under Superintendent Snelling, specifically, Deputy Chief Stephen Chung, former Deputy Chief Frederick Melean, Commander Lewis Courts, Commander Davina Ward, and Deputy Director Fred Waller. Lastly, the City has not objected to Plaintiffs taking the depositions of every past superintendent and acting superintendent over the relevant time period (seven witnesses total). These depositions, coupled with the documentary record, afford Plaintiffs ample opportunity to obtain testimony regarding CPD's traffic stop-related directives, practices, and strategies during Superintendent Snelling's tenure, without drawing the Superintendent himself away from his official duties.

## LEGAL STANDARD

The scope of discovery is limited to "any nonprivileged matter that is relevant to any party's claim or defense," and must be "proportional to the needs of the case," considering, among

---

[2] None of the text messages were responsive to the parties' agreed-upon or court-ordered search terms. Text messages including Superintendent Snelling from other sources related to the period of time prior to him being named Superintendent have been produced and covered in deposition.
[3] The parties are in discussions about a potential stipulation in lieu of deposition for three of these witnesses. *See* Dkt. 199.

other things, the "importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). Federal Rules of Civil Procedure 26(c)(1) provides that protective orders may address "matters relating to a deposition," and that courts "may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense," including by prohibiting discovery or prescribing other discovery methods.

District courts are "in the best position to decide the proper scope of discovery and to settle any discovery disputes." *Scott v. Chuhak & Tecson, P.C.,* 725 F.3d 772, 785 (7th Cir. 2017). Further, "district courts enjoy extremely broad discretion in controlling discovery." *Jones v. City of Elkhart,* 737 F.3d 1107, 1115 (7th Cir. 2013).

## ARGUMENT

Courts have long recognized that "depositions of public officials create unique concerns." *Bless v. Cook County Sheriff's Office*, 9 F.4th 565, 570 (7th Cir. 2021) (quoting *Stagman v. Ryan*, 176 F.3d 986, 994 (7th Cir. 1999)). High-level public officials "should not be taken away" from their duties and responsibilities to give deposition testimony "unless there is a real need." *Olivieri*, 122 F.3d at 409 (affirming denial of request to depose CPD superintendent); *see Little v. JB Pritzker for Governor*, No. 18 C 6954, 2020 WL 868528, at *3 (granting motion for protective order to bar governor's deposition); *Lee v. City of Chicago*, No. 20 CV 1508, 2021 WL 2399999, at *6 (N.D. Ill. June 11, 2021) (granting motion for protective order to bar former COPA chief administrator's deposition). As such, under the "apex doctrine," courts "may protect high-level executives from being deposed when ***any of*** four circumstances exist: (1) the official has 'no unique personal knowledge of the matter in dispute'; (2) the information can be garnered from other witnesses or (3) other discovery methods; and (4) sitting for the deposition would impose a

5

hardship in light of the officer's other duties." *Little*, 2020 WL 868528, at *1 (emphasis added). While any one of these circumstances would, on its own, justify preventing Superintendent Snelling's deposition, all four circumstances are present here.

### I. Plaintiffs Cannot Establish A "Real Need" Where Plaintiffs Have Obtained And Will Obtain Discovery On CPD's Traffic Stop Practices Through Other Witnesses And Cannot Establish The Superintendent's Unique Personal Knowledge

Superintendent Snelling is not a defendant in this lawsuit. Plaintiffs have only sued the City claiming constitutional violations that arise out of CPD's purported implementation of a "mass traffic stop program" which allegedly involves "targeting Black and Latino drivers for pretextual traffic stops citywide, saturating Black and/or Latino neighborhoods with pretextual traffic stops, and imposing quotas for pretextual traffic stops." (Dkt. 87 (Am. Compl.) at ¶ 460.) The time period for these alleged practices spans nearly a decade, from late 2015/early 2016 through the present. (*See id.* at ¶ 485.) The claims cover three mayoral administrations and eight CPD superintendents or acting superintendents. Superintendent Snelling became superintendent in September 2023. Thus, he has been superintendent for the last approximately two years of the decade at issue—a time in which it appears that CPD's use of traffic stops has decreased. (*See* Dkt. 155-1 (Knox Decl.) at p. 11, fig. 1.)

While Superintendent Snelling naturally has knowledge of CPD's traffic stop practices, he is far from the only possible source of discovery into the subject of CPD's traffic stop practices. Plaintiffs have already been provided an extraordinarily large documentary record through which to establish the nature and goals of CPD's traffic stop practices during (and prior to) Superintendent Snelling's tenure. Plaintiffs have been provided emails, text messages and memoranda related to the Superintendent—none revealing unique personal knowledge and none that could not be otherwise discovered through the other individuals identified in these records. The City also has made or will make available for deposition eight senior CPD personnel who

6

have served under Superintendent Snelling, totaling up to fifty-six hours of testimony. Plaintiffs have had and will have ample opportunity through these depositions to obtain testimony regarding CPD's traffic stop practices and to probe whether those practices were allegedly discriminatory. None of the depositions completed to date have indicated that Superintendent Snelling, alone, possesses knowledge necessary to ascertain CPD's traffic stop practices.

Plaintiffs have never identified information relevant to the purported "mass traffic stop program" which is uniquely within the Superintendent's knowledge, nor explained why the City's voluminous document productions or testimony of other senior CPD personnel is insufficient to discover the various aspects of CPD's traffic stop practices. Rather, they seek his deposition by virtue of his status as the "leader" of the Department. (Ex. 2.) If this were enough to require the Superintendent's deposition, however, "apex" witnesses would be deposed in every case asserting claims arising from municipal policies or practices. That is clearly not the case. *See LaPorta v. City of Chicago*, No. 14 C 9665, 2016 WL 4429746, at *2 (N.D. Ill. Aug. 22, 2016) (denying motion to compel mayor's deposition in relation to *Monell* claim); *Rogers v. City of Indianapolis*, No. 1:24-cv-02055-RLY-MJD, 2025 WL 2932756, at *3 (S.D. Ind. Oct. 15, 2025) (granting motion for protective order to bar former police chief's deposition in relation to negligent training claim). Given the extensive documentary and testimonial evidence of CPD's traffic stop practices already available to Plaintiffs, and without more basis for seeking Superintendent Snelling's deposition beyond his position as the Department's "leader," Plaintiffs' notice of deposition should be quashed.

II. **Plaintiffs Have Not Availed Themselves Of Other Discovery Methods**

Courts routinely prevent depositions of "apex" witnesses where the party seeking the deposition has not first attempted other, less intrusive discovery methods. *See Patterson v. Avery*

7

196652654v4

*Dennison Corp.*, 281 F.3d 676, 682 (7th Cir. 2002) (affirming denial of motion to compel vice president's deposition where plaintiff failed to issue interrogatories; "Patterson's failure to take advantage of this inexpensive, convenient method of discovery [ ] casts serious doubt over her claim that Miller possessed information that was more than marginally relevant to her civil action"); *Olivieri*, 122 F.3d at 410 (district judge "quite rightly refused to let [plaintiff] depose the superintendent" where plaintiff failed to propound interrogatories); *LaPorta*, 2016 WL 4429746, at *2 (plaintiff's failure to serve interrogatories "by itself is enough to warrant" denial of motion to compel mayor's deposition); *see also Donald v. City of Chicago*, No. 20 C 6815, 2022 WL 621814, at *2 (N.D. Ill. Mar. 3, 2022) (granting motion for protective order directing issuance of interrogatories in lieu of mayor's deposition).

Plaintiffs, in previously proposing that the City provide stipulation language in lieu of Superintendent Snelling's deposition, have implicitly acknowledged that any information they seek from the Superintendent could be obtained through methods other than his deposition. Yet in the more than two years since filing their initial complaint, Plaintiffs have not, themselves, pursued any other discovery methods, such as written discovery requests, directed at Superintendent Snelling's knowledge of CPD's traffic stop practices. This failure "casts serious doubt over" any claims that Superintendent Snelling's testimony is necessary to develop or prove Plaintiffs' claims, and provides another grounds for quashing the notice of deposition. *Patterson*, 281 F.3d at 682.

### III. Requiring The Current Superintendent To Sit For Deposition Would Impose A Substantial Hardship

Superintendent Snelling leads and manages the second-largest police department in the nation, with a police force of over 11,500 officers. His schedule is already full with both pre-scheduled meetings necessary to make decisions relating to the daily operations of the Department, as well as meetings to address active events throughout the city, in addition to the daily tasks of

managing and attending to the operational concerns of the Department. (Ex. 3 at ¶¶ 3-4.) Setting a day or even several hours aside on his calendar to prepare and sit for a deposition would almost certainly mean cancelling or missing these important meetings. Additionally, during the time period remaining to complete oral discovery, the Superintendent will be focused on preparing the Department for the busy summer months, as well as preparing the Department's plan for Consent Decree compliance for the coming year. Again, taking time away for a deposition in this case would divert his attention from these important projects and his day-to-day oversight of the operational needs of the Department.

Superintendent Snelling's duties as superintendent require him to spend nearly all his time—both during regular working hours and his own personal time—ensuring the operations of the Department are carried out effectively, in accordance with its mission to protect the lives, property, and rights of the people of Chicago. Given the significant demands on his time, Superintendent Snelling should not be required to sit for a deposition because Plaintiffs have clearly failed to establish unique personal knowledge and a "real need" for his deposition. *Olivieri*, 122 F.3d at 409; *see supra*, Sections I and II.

WHEREFORE, Defendant City of Chicago respectfully requests that this Court enter a protective order quashing the Notice of Videotaped Deposition issued by Plaintiffs for Superintendent Larry Snelling, and grant such further relief as this Court deems just and proper.

Dated: December 17, 2025

Respectfully submitted,

**CITY OF CHICAGO**

By: */s/* Michael P. Sheehan
One of Its Attorneys

Michael P. Sheehan
Allan T. Slagel
Barton J. O'Brien

9

196652654v4

Elizabeth A. Winkowski
Sara J. Schroeder
Joan E. Ahn
TAFT STETTINIUS AND HOLLISTER LLP
111 East Wacker Drive, Suite 2600
Chicago, Illinois 60601
Telephone: (312) 527-4000
Facsimile: (312) 527-4011
Email:
msheehan@taftlaw.com
aslagel@taftlaw.com
bobrien@taftlaw.com
ewinkowski@taftlaw.com
sschroeder@taftlaw.com
jahn@taftlaw.com

196652654v4