**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| ERIC WILKINS, MAHARI BELL, ESSENCE JEFFERSON, JOSE MANUEL ALMANZA, JR., and JACQUEZ BEASLEY, | Case No. 23-cv-4072 |
| Plaintiffs, | Judge Mary M. Rowland |
| v. | |
| CITY OF CHICAGO, | |
| Defendant. | |

**MEMORANDUM OPINION AND ORDER**

Plaintiffs have sued the City of Chicago (the "City"), seeking declaratory and injunctive relief based on Defendants' allegedly discriminatory traffic stop program. Plaintiffs allege violations of their Equal Protection rights under the Fourteenth Amendment pursuant to 42 U.S.C. § 1983 and bring claims under Section 5(a)(1) of the Illinois Civil Rights Act ("ICRA") of 2003. Before the Court is the City's motion [240] for a protective order to quash Plaintiffs' first set of requests for admission ("RFAs") and second set of interrogatories. For the reasons stated herein, the City's motion [240] is granted in part and denied in part.

## I. Background[1]

On March 18, 2026, Plaintiffs submitted 27 distinct RFAs to the City. [240-1]. Including subparts, the RFAs total 138. *Id*. At the same time, Plaintiffs issued a

[1] The Court assumes familiarity with the facts of the case.

second set of interrogatories to the City. [240-2]. The second set of interrogatories states in its entirety:

> To the extent any of your responses to each of Plaintiffs' First Requests for Admission (dated March 18, 2026) was anything other than an unqualified admission, state all facts that support, refute, or relate to your basis for refusing to admit the Request.

*Id*. The City objected to both requests. The parties met and conferred and could not reach an accord, so the City filed the motion now before the Court. *See* [240] at 2 n.2.

## II. Legal Standard

RFAs are governed by Federal Rule of Civil Procedure 36, which provides in part:

> If a matter is not admitted, the answer must specifically deny it or state in detail why the answering party cannot truthfully admit or deny it. A denial must fairly respond to the substance of the matter; and when good faith requires that a party qualify an answer or deny only a part of a matter, the answer must specify the part admitted and qualify or deny the rest.

Fed. R. Civ. P. 36(a)(4). RFAs have a "very different and more limited purpose than other procedures such as depositions, interrogatories, and requests to produce documents. The latter are part of the fishing expedition that is inherently a proper part of pretrial discovery . . . [t]he former are not." *Sommerfield v. City of Chicago*, No. 06 C 3132, 2008 WL 11395581, at *3 (N.D. Ill. July 17, 2008) (cleaned up). The purpose of an RFA is not to seek new information, but to "obtain[] admissions for the record of facts already known by the party propounding the request." *S.E.C. v. Nutmeg Grp., LLC*, 285 F.R.D. 403, 405 (N.D. Ill. 2012). To that end, RFAs "should be simple and direct so that they can be readily admitted or denied." *Tamas v. Family*

*Video Movie Club, Inc.*, 301 F.R.D. 346, 347 (N.D. Ill. 2014) (citation omitted); *see also United States v. Kasuboski*, 834 F.2d 1345, 1350 (7th Cir. 1987) (the purpose of RFAs is to "narrow the issues to be resolved at trial by effectively identifying and eliminating those matters on which the parties agree.").

Although neither the Federal Rules of Civil Procedure nor the Court's local rules provide any express limitation on the number of RFAs a party can propound, courts "routinely disallow requests for admission that run into the hundreds on the grounds that they are abusive, unreasonable, and oppressive." *Robinson v. Stanley*, No. 06 C 5158, 2009 WL 3233909, *2 (N.D. Ill. Oct. 8, 2009).

Courts also disallow RFAs where a request "clearly implies that [the responding party] acted inappropriately or had bad intent," such that the propounding party "cannot reasonably believe" that an opposing party would admit the request. *Stanek v. St. Charles Comm. Unit Cummings Sch. Dist.*, No. 13 C 3106, 2020 WL 9348204, at *5 (N.D. Ill. Sept. 3, 2020); *see also Republic of Turkey v. Christie's, Inc.*, 326 F.R.D. 394, 399 (S.D.N.Y. 2018) (stating that requests may not "seek information as to fundamental disagreement at the heart of the lawsuit").

## III. Discussion

### A. Plaintiffs' First Set of Requests for Admission

The City first challenges several RFAs on the basis that they reference "Pretextual Traffic Stops." For example, RFA 13 asks the City to admit that "[f]rom October 1, 2015, to the present, CPD policy has permitted Pretextual Traffic Stops." [240-1] at 13. Likewise, RFA 20 seeks an admission that "[t]he City (including CPD) has not at

any time conducted a validated statistical analysis demonstrating that Pretextual Traffic Stops cause a reduction in crime in Chicago." [240-1] at 11.

The RFAs define Pretextual Traffic Stop to mean:

> "[A] traffic stop in which a police officer uses probable cause that a driver has committed a traffic or parking infraction (including a vehicle equipment or license/registration violation) to conduct a stop with the intention to investigate or deter another crime that is unrelated to the traffic or parking infraction."

[240-1] at 2. The City argues that these requests should be quashed because the City disputes Plaintiffs' definition for "Pretextual Traffic Stops." [240] at 4-6. As a result, the City argues, the RFAs cannot be easily admitted or denied without a substantial narrative response. [240] at 4-6.

Plaintiffs respond that these RFAs are unobjectionable because (1) the City's own witnesses have unanimously confirmed that the City conducts pretextual traffic stops, and (2) Plaintiffs provided their own definition to the term. [255] at 6-9, 12.

As to the first argument, it is apparent from Plaintiffs' response that many different witnesses have at least somewhat *different* definitions of the term "pretextual traffic stop." And more importantly, as to the second argument, that Plaintiffs came up with a definition for "Pretextual Traffic Stops" does not mean that the City (or its witnesses) agree with that definition.

The manner in which the City conducts traffic stops lies at the heart of this case. If this litigation proceeds to a trial, the City will undoubtedly seek to put forth its own explanation regarding its traffic stop practices. Plaintiffs cannot "reasonably expect" the City to admit or deny Plaintiffs' RFAs regarding its traffic stop practices

without offering a lengthy narrative response, *Stanek*, 2020 WL 9348204, at *5 (N.D. Ill. Sept. 3, 2020), and the RFAs impermissibly "seek information as to the fundamental disagreement at the heart of the lawsuit." *Turkey*, 326 F.R.D. at 399; *see also Andersen v. City of Chicago*, No. 16 C 1963, 2018 WL 11651212, at *2 (N.D. Ill. Mar. 12, 2018) (granting motion for protective order to quash RFAs premised on prefatory definitions where they rely on the propounding party's self-serving definitions because those definitions will be relitigated in future briefing or at trial). Accordingly, the City's motion to quash with respect to RFAs 11, 12, 13, 20, 21, 23, and 25, inclusive of each RFA's subparts, is granted.

Relatedly, the City challenges RFAs 19, 22, and 24 (and their subparts), which each seek an admission that the City has not done a "validated statistical analysis" about the effect that traffic stops *generally* have on safety in Chicago. For example, RFA 19(c) asks the City to admit that the "City (including CPD) has not at any time conducted a validated statistical analysis demonstrating that traffic stops reduce gang violence in Chicago." [240-1] at 12. The City objects because these requests incorporate undefined terms, including "validated statistical analysis," "demonstrating," "cause", "improve" and "gang violence."

"[A] party responding to a request for admission is required to use reason and common sense in interpreting phrases used in the request." *Whole Woman's Health All. v. Hill*, No. 118CV01904SEBMJD, 2020 WL 1028040, at *7 (S.D. Ind. Mar. 2, 2020). The Court has confidence that the City can apply common sense to ascertain a reasonable definition of words like "demonstrating," "cause," "improve," and "gang

violence." But the Court agrees that "validated statistical analysis" is impermissibly vague. Validated according to whom? Validated under what standard? Plaintiffs do not explain what they mean by "validated statistical analysis" in their response brief. A matter admitted under Rule 36 is "conclusively established" as true. Fed. R. Civ. P. 36(b). The City cannot be made to answer conclusively RFAs that use a vague term. Accordingly, the motion to quash is also granted with respect to RFAs 19, 22, and 24, inclusive of all their subparts.

The City also challenges multiple RFAs because they reference indeterminate events and communications that do not appear to be known to Plaintiffs. For example, RFAs 13 and 14 ask the City to admit the truth of various statements made by unnamed sources and published in the *Chicago Sun-Times*. [240-1] at 8-9; [255] at 11. Because Plaintiffs are clearly seeking to learn new information—that is, whether the statements in the *Sun-Times* are accurate—rather than confirming information they already know to be true, these RFAs are an improper use of Rule 36.

The City challenges RFA 18 and its subparts, which relate to various comments that then-Superintendent Brown made at a City Council budget hearing. It is permissible for Plaintiffs to request that the City admit that Brown made statements he is on video making; it is impermissible to use Rule 36 to try to force the City to agree with Plaintiffs' characterizations of Brown's statements. Accordingly, the motion to quash is granted with respect to 18(a) and 18(b); it is denied with respect to RFA 18 itself and its other remaining subparts.

The City likewise challenges RFAs 7-10, which seek to authenticate multiple City-produced documents. [240-1] at 4-5. This is a permissible use of Rule 36. Each of these RFAs contains permissible subparts that ask the City to admit to verifiable, objective facts about the documents. *E.g.*, RFA 7(b). But certain subparts of each RFA ask the City to adopt Plaintiff's characterization of the documents. *E.g.*, RFA 7(d), 8(f). Such requests are not readily admissible and do not further the purposes of Rule 36. Accordingly, the motion to quash is granted with respect to RFAs 7(d), 7(e), 7(f), 8(f), 8(h), 10(d), 10(e), 10(f), and 10(g). It is denied with respect to the remaining subparts in RFAs 7-10, as well as with respect to RFA 9 in its entirety.

The City challenges RFAs 1, 2, 3, 4, and 15, which each contain quotations from City-produced documents or other public videos and request that the City admit or deny the existence of quotations within in the documents or videos. [240-1] at 3-4, 9. These are all permissible uses of RFAs; the motion to quash is thus denied with respect to each.

The City does challenge RFA 5 and RFA 6, which each reference CPD's "Top 55" and "Top 35" police beats, respectively. These RFAs reference documents that the City produced and seek confirmation about what those beats were. [240-1] at 4. It is not clear to the Court what about these requests represents an undue burden to the City, so the motion to quash is denied with respect to each.

The City challenges RFA 16[1], which asks the City to admit that "[i]n or around January 2021, then-CPD Superintendent David Brown communicated to then-Deputy Chief Barz that the Superintendent wanted CPD to conduct at least 10,000

traffic stops per week Department-wide." [240-1] at 9. Plaintiffs explain in their response brief that this RFA is premised on deposition testimony from a *separate* lawsuit from CPD Seargent Stephen Boyd. [255] at 11. Initially, the Court notes that the RFA misstates Seargent Boyd's testimony; Boyd testified that Barz said that Brown *believed* that 10,000 traffic stops a week would reduce violence; Plaintiffs ask the City to admit that Brown *wanted to conduct* that number of stops. [194-10] at 62-63. Notwithstanding that Plaintiffs' use of Boyd's testimony for this purpose relies at least two layers of hearsay, it cannot be said that RFA 16[1] is "simple and direct so that they can be readily admitted or denied." *Tamas*, 301 F.R.D. at 347. Accordingly, the motion to quash is granted with respect to RFA 16[1].

In RFA 17[1],[2] 16[2], and their subparts, Plaintiffs seek various admissions regarding an email that a third party produced. *See* [255] at 11; [264] at 12.[3] In the email, someone identified as a CPD Captain wrote from a personal email address to over a hundred other individuals regarding a mandated number of traffic stops. *Id*. The RFAs ask the City to admit the truth of the captain's statements, that the captain made the statement "as an employee of CPD," and to various facts about the numerous recipients of the emails, many of whom are identifiable only by personal (that is, non-CPD) email addresses. These RFAs do not lend themselves to facts readily admitted or denied by the City. The City presents no objections to RFA 17[2];

[2] Plaintiffs' RFAs contain two requests each numbered 16 and 17. In briefing this motion, the parties refer to the requests as 16[1], 16[2], 17[1], and 17[2], based on the order in which they appear. The Court adopts this convention for this memorandum.

[3] Neither party provided the document in their briefing, so the Court takes as true both parties' descriptions of the exhibit.

the motion to quash is denied as to that request. In sum the motion to quash is granted with respect to RFA 17[1], 17[1](b), 17[1](d)-17[1](h), 16[2], 16[2](a), and 16[2](b).

### B. Plaintiff's Second Set of Interrogatories

As noted above, Plaintiff's second set of interrogatories contains a single request which asks the City to "state all facts that support, refute, or relate" to the City's response to any RFA which the City does not admit. Courts regularly reject interrogatories of this kind where "the use of a single interrogatory . . . circumvents the limit on the number of interrogatories permitted by Rule 33 and effectively turns each request for admission into a separate interrogatory." *In re Dealer Mgmt. Sys. Antitrust Litig.*, No. 18 C 864, 2018 WL 6048262, at *6 (N.D. Ill. Nov. 19, 2018); *see also Safeco of Am. v. Rawstron,* 181 F.R.D. 441, 445 (C.D. Cal. 1998) ("Allowing service of an interrogatory which requests disclosure of all of the information on which the denials of each of 50 requests for admissions were based, however, essentially transforms each request for admission into an interrogatory. This is not the purpose requests for admissions were intended to serve . . . ."). The Court agrees that Plaintiff's second set of interrogatories is improper for the same reason. The City's motion to quash is thus granted with respect to Plaintiff's second set of interrogatories.

## IV. CONCLUSION

For the reasons stated herein, the City's motion a protective order to quash Plaintiffs' first set of requests for admission and second set of interrogatories is

granted in part and denied in party. It is granted with respect to RFAs 7(d), 7(e), 7(f), 8(f), 8(h), 10(d), 10(e), 10(f), 10(g), 11 (inclusive of subparts), 12-14 (inclusive of subparts), 16[1], 17[1], 17[1](b), 17[1](d)-17[1](h), 16[2], 16[2](a), 16[2](b), 18(a) and 18(b), 19-25 (inclusive of subparts). The motion to quash is also granted with respect to Plaintiffs' second set of interrogatories. Defendant is to provide responses consistent with this Order by October 2, 2026.

Dated: September 18, 2026

Mary M Rowland

MARY M. ROWLAND
United States District Judge