**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| ERIC WILKINS, MAHARI BELL, ESSENCE JEFFERSON, JOSE MANUEL ALMANZA, JR., and JACQUEZ BEASLEY, | Case No. 23-cv-4072 |
| Plaintiffs, | Judge Mary M. Rowland |
| v. | |
| CITY OF CHICAGO, | |
| Defendant. | |

**MEMORANDUM OPINION AND ORDER**

Plaintiffs have sued the City of Chicago (the "City"), seeking declaratory and injunctive relief based on Defendants' allegedly discriminatory traffic stop program. Plaintiffs allege violations of their Equal Protection rights under the Fourteenth Amendment pursuant to 42 U.S.C. § 1983 and bring claims under Section 5(a)(1) of the Illinois Civil Rights Act ("ICRA") of 2003. Before the Court is Plaintiffs' motion [259] to compel the production of documents and certain testimony from one of the City's witnesses. For the reasons stated herein, Plaintiff's motion is granted in part and denied in part.

## I. Background[1]

On March 13, 2026, the City produced a privilege log identifying 418 documents withheld in whole or in part based on assertions of attorney-client privilege or the

[1] The Court assumes familiarity with the facts of the case.

deliberative process privilege. Plaintiffs challenge the City's privilege assertions as to 80 of them, which Plaintiffs split into three appendices. [259] at 3.

Appendix I identifies 37 documents concerning the City's responses to media inquiries, articles, or reports. For example, the City invoked attorney-client privilege and deliberative process privilege to redact an email chain in which City personnel discussed drafting a statement responding to a report from the ACLU titled "Racism in the Rear View Mirror: Illinois Traffic Stop Data 2015-2017."

Appendix II identifies 32[2] documents concerning remarks delivered by Chicago Police Department ("CPD") Chief Angel Novalez regarding a special hearing on traffic stops held by the Community Commission for Public Safety and Accountability ("CCPSA") on August 27, 2024.

Appendix III identifies 11 documents representing communications among personnel from the City (not including any CPD participants) regarding CPD's traffic stop policy.

The City provided the documents to the Court for an *in camera* review.

Separately, Plaintiffs challenge privilege assertions that the City made during Plaintiffs' deposition of Lieutenant Michael Kapustianyk. [259] at 4. The City disclosed Kapustianyk as a witness knowledgeable about "the development and implementation of CPD directives and orders relating to traffic stops and CPD's prohibition against racial profiling and bias-based policing." *Id.* Plaintiffs took Kapustianyk's deposition on April 14, 2026, and the City instructed him not answer

[2] After Plaintiffs filed the instant motion, the City withdrew its privilege assertions over four documents in Appendix II. [275] at 7 n.9.

multiple questions, asserting attorney-client privilege, deliberative process privilege, and a settlement negotiations privilege.

Finally, Plaintiffs challenge the City's non-production of various traffic stop policy drafts. *Id*. at 4-5. Plaintiffs contend that they requested such documents in their requests for production, but the City failed to produce any. *Id*. Kapustianyk testified at his deposition that he reviewed drafts of the policy and other related documents, and Plaintiffs now seek (again) their production.

## II. Legal Standard

Rule 26(b)(1) provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). A party withholding otherwise discoverable information as privileged must expressly assert the claim and describe the withheld documents in sufficient detail to "enable other parties to assess the claim." Fed. R. Civ. P. 26(b)(5)(A). Furthermore, "Rule 26 mandates that a withholding party make a claim of privilege expressly and 'describe the nature of the documents, communications, or tangible things not produced or disclosed … in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim.'" *DeLeon v. Reyes-Guevara*, No. 1:18-cv-01028, 2020 WL 3050230, at *3 (N.D. Ill. June 8, 2020) (quoting Fed. R. Civ. P. 26(b)(5)(A)).

### A. Attorney-Client Privilege

"The attorney-client privilege protects communications made in confidence by a client and a client's employees to an attorney, acting as an attorney, for the purpose

of obtaining legal advice." *Sandra T.E. v. South Berwyn School Dist.*, 100, 600 F.3d 612, 618 (7th Cir. 2010). To determine whether a communication falls within the protection of the attorney-client privilege, courts ask: "(1) whether 'legal advice of any kind [was] sought . . . from a professional legal adviser in his capacity as such'; and (2) whether the communication was 'relat[ed] to that purpose' and 'made in confidence . . . by the client.'" *Id.* The attorney-client privilege "protects not only the attorney-client relationship in imminent or ongoing litigation but also the broader attorney-client relationship outside the litigation context." *Id.* at 621 (observing that "government[al] entities are frequently exposed to civil liability," with the risk being "particularly acute for municipalities"). "The public interest is best served when agencies of the government have access to the confidential advice of counsel regarding the legal consequences of their past and present activities." *Id.*

### B. Deliberative Process Privilege

The deliberative process privilege protects "communications that are part of the decision-making process of a governmental agency." *United States v. Farley*, 11 F.3d 1385, 1389 (7th Cir. 1993) (citing *N. L. R. B. v. Sears, Roebuck & Co.*, 421 U.S. 132, 150–52 (1975)). The privilege shields "communications made prior to and as a part of an agency determination" from disclosure. *Id*. These communications include "documents reflecting advisory opinions, recommendations[,] and deliberations comprising part of a process by which governmental decisions and policies are formulated." *Dep't of Interior v. Klamath Water Users Protective Assoc.*, 532 U.S. 1, 8 (2001) (citing S*ears, Roebuck & Co.*, 421 U.S. at 150); *see also Nat'l Immigrant Just.*

*Ctr. v. United States Dep't of Just.*, 953 F.3d 503, 508 (7th Cir. 2020) (the privilege protects deliberative communications that "reflect the give-and-take of the consultative process."). "The privilege only protects expressions of opinion or recommendations; it does not protect purely factual material." *Tumas v. Bd. of Educ.*, No. 06 C 1943, 2007 WL 2228695, at *1, 2007 U.S. Dist. LEXIS 56242, at *4 (N.D. Ill. July 31, 2007) (quoting *Bobkoski v. Board of Educ.,* 141 F.R.D. 88, 91 (N.D. Ill. 1992)). In order to qualify for the privilege, "a document must be both predecisional in the sense that it is actually antecedent to the adoption of an agency policy, and deliberative in the sense that it is actually related to the process by which policies are formulated." *Enviro Tech Int'l, Inc. v. U.S. E.P.A.*, 371 F.3d 370, 375 (7th Cir. 2004) (citation omitted) (quotation omitted).

## III. Discussion

### A. The City's Privilege Log

#### i. Appendix I

As indicated above, Plaintiffs challenge 37 documents from Appendix I,[3] which each concern the City's responses to media inquiries, articles, or reports. The City asserted attorney-client privilege, deliberative process privilege, or both with respect to each document. The Court conducted an *in camera* review of all the provided documents.[4]

[3] The following documents from Appendix I were not provided to the Court: CITY01488185, CITY00693844, CITY00693842, CITY00693846, CITY00693849, CITY00725131, and CITY00248521.

[4] Although the Plaintiffs challenge the City's privilege assertions as to 37 unique documents, many of documents are near duplicates of one another that contain iterative versions of email chains. The Court has reviewed all documents in Appendix I: CITY00717589, CITY00761407, CITY00761277, CITY00725133, CITY01491847, CITY00846680, CITY00846658, CITY01507552, CITY01507555, CITY00846676, CITY01507558, CITY01507562, CITY00761274, CITY00063074, CITY00062818,

Plaintiffs argue that "attorney-client privilege does not attach to public relations inquiries, as those communications are not made for the purpose of obtaining legal advice." [259] at 8. Plaintiffs are correct as far as that goes; public relations communications are manifestly not legal advice. But if a person seeks legal advice in determining *how to respond* to a public relations inquiry, then the privilege attaches. *See Alomari v. Ohio Dep't of Pub. Safety*, 626 Fed. Appx. 558, 571 (6th Cir. 2015) (recognizing that "[a]dvising a client on how to respond to media inquiries has important legal implications").

For example, Plaintiffs challenge the City's attorney-client privilege assertion over CITY00761556, where employees for the City discuss how to respond to an inquiry from Block Club Chicago regarding traffic stops. One employee forwarded the inquiry to Scott Stringer, then-assistant general counsel for the City, for the specific purpose of obtaining legal advice. Later in the thread, the first employee recounts legal advice he received from another of the City's attorneys. This communication and others like it, *e.g.*, CITY00761571, where City employees are providing updates to their counsel, are clearly protected by attorney-client privilege.

Plaintiffs also challenge the City's assertion of the deliberative process privilege. The parties' dispute stems from a disagreement about whether the deliberative process privilege can shield from discovery internal communications regarding how to respond to press inquiries. Courts are split on the matter. *Compare Stevens v.*

CITY00062859, CITY00701708, CITY00701711, CITY00561051, CITY00380392, CITY00062862, CITY00062866, CITY00380396, CITY00062789, CITY00380401, CITY00062870, CITY00380406, CITY00380412, CITY00701472, CITY00701469, CITY01489074, CITY00761556, CITY00761565, CITY00761571, PRIV0000144.

*United States Dep't of Homeland Sec., Immigr. & Customs Enf't*, No. 14 C 3305, 2020 WL 1701882, at *6 (N.D. Ill. Apr. 8, 2020) (J., Leinenweber) (finding that the privilege does not apply to deliberations about what messages should be delivered to the public regarding an already-decided policy decision) *with Stevens v. United States Dep't of State*, No. 17 C 2494, 2020 WL 1330653, at *8 (N.D. Ill. Mar. 23, 2020), *aff'd*, 20 F.4th 337 (7th Cir. 2021) (J., Lee) ("[A]gency deliberations about how to respond to media inquiries, suggested talking points, and determinations about how to respond to ... public interest groups [and] members of Congress" are protected by the privilege) (citation omitted)(quotation omitted).

For the reasons explained in Judge Leinenweber's thorough opinion, the Court agrees with Plaintiffs and holds that the privilege does not apply to internal communications regarding how to respond to press inquiries about the City's already adopted policies. The Seventh Circuit has held that the privilege can only apply to communications "generated *before* the adoption of an agency policy." *Nat'l Immigrant Just. Ctr. v. United States Dep't of Just.*, 953 F.3d 503, 508 (7th Cir. 2020) (citation omitted) (emphasis in original). The City regularly asserted the privilege in response to inquiries about the City's *already existing* traffic stop policies. The City argues that because its polices "continue to be developed and implemented," the privilege applies. But in CITY00717589, for example, the City asserted the privilege over a draft response to a media inquiry in 2023 asking about the City's practices dating back to at least 2021. The City's argument that the privilege applies to all communications regarding its policies which may (or may not) change in the future would expand the

privilege well beyond its current confines. *See also New York v. United States Dep't of Com.*, No. 18-CV-2921 (JMF), 2018 WL 4853891, at *2 (S.D.N.Y. Oct. 5, 2018) ("[C]ommunications [that] amount to little more than deliberations over how to spin a prior decision, or [that] merely reflect an effort to ensure that an agency's statement is consistent with its prior decision" are not protected under the deliberative process privilege).

Accordingly, the Court holds that the City's assertion of the deliberative process to describe its already existing policies and practices in response to media inquiries, *e.g.*, CITY00717589, CITY00380412, is improper. The Court finds the City's deliberative process and attorney client privilege assertions improper as to the following documents in Appendix I: CITY00717589, CITY00761407, CITY00761277, CITY00725133, CITY00063074, CITY00062818, CITY00062859, CITY00701708, CITY00701711, CITY00561051, CITY00380392, CITY00062862, CITY00062866, CITY00380396, CITY00062789, CITY00380401, CITY00062870, CITY00380406, CITY00380412, CITY00701472, CITY00701469, CITY01489074, and CITY00761565.

### ii. Appendix II[5]

The City next challenges the 32 documents concerning remarks delivered by CPD Chief Angel Novalez regarding a special hearing on traffic stops held by the Community Commission for Public Safety and Accountability ("CCPSA"). Again, the

[5] The Court has reviewed each document identified in Appendix II: CITY01493173, CITY01493174, PRIV0000079, PRIV0000080, PRIV0000081, PRIV0000082, PRIV0000083, PRIV0000084, PRIV0000085, PRIV0000109, PRIV0000110, PRIV0000111, PRIV0000112, PRIV0000076, PRIV0000077, PRIV0000078, PRIV0000086, PRIV0000087, PRIV0000088, PRIV0000089, PRIV0000105, PRIV0000106, PRIV0000107, PRIV0000108, CITY01488225, PRIV0000025, PRIV0000074, PRIV0000075, PRIV0000013, PRIV0000014, CITY01488241, CITY01488235.

City asserts either attorney client privilege or deliberative process privilege as to both.[6]

The Court begins with the City's assertion of attorney client privilege. PRIV0000025, CITY01488225, CITY01493173 are emails from Deputy Corporation Counsel Jennifer Bagby. In her emails, Bagby provides legal advice to Anthony Driver, the CCPSA president, the Corporation Counsel or Superintendent Snelling. The City appropriately withheld these communications based on the attorney client privilege.

But the City improperly asserted attorney client privilege over other documents in Appendix II. For example, the City asserted the privilege over PRIV0000081, which appears to be an internal draft agenda for the CCPSA hearing. There is nothing on the face of the document that indicates it was prepared to solicit or offer legal advice. Attorney client privilege thus does not attach. Other documents in Appendix II similarly contain no indication that they were prepared for the purpose of receiving or offering legal advice. *E.g.*, PRIV0000074, PRIV0000089. Another document, PRIV0000075, contains a redline of proposed remarks from Kapustianyk. Kapustianyk is not a lawyer himself, and there is no indication he prepared the redline for the purposes of receiving or offering legal advice. The assertion of privilege over this document is improper.

The Court finds that the City's deliberative process privilege assertion is improper as to the following documents in Appendix II: CITY01493174, PRIV0000079,

[6] The following documents identified in Appendix II were not provided to the Court: PRIV0000013, PRIV0000014, CITY01488241, CITY01488235.

PRIV0000080, PRIV0000081, PRIV0000082, PRIV0000083, PRIV0000084, PRIV0000085, PRIV0000109, PRIV0000110, PRIV0000111, PRIV0000112, PRIV0000076, PRIV0000077, PRIV0000078, PRIV0000086, PRIV0000087, PRIV0000088, PRIV0000089, PRIV0000105, PRIV0000106, PRIV0000107, PRIV0000108, PRIV0000074, and PRIV0000075. The purpose of the CCPSA hearing was to examine the impact of the City's traffic stop policies and request a review of its traffic stop policies. [259] at 10. The City asserted deliberative process privilege over multiple emails and draft talking points prepared for Chief Novalez in advance of that hearing. *E.g.*, CITY01493174. But again, these communications were prepared to defend the City's *already existing* policies. Therefore, the deliberative process privilege does not apply. *Nat'l Immigrant Just. Ctr,* 953 F.3d at 508. (7th Cir. 2020) (privilege only covers communications "generated before the adoption of an agency policy.").

**iii. Appendix III**

The Court next turns to the 11 documents in Appendix III, each of which the City asserted only deliberative process privilege over.[7] Six of the contested documents are versions of a draft traffic stop memorandum and a draft presentation regarding a proposal to modify the structure of the City's Community Safety function. Draft documents of this kind are protected by the deliberative process privilege. *See Enviro Tech*, 371 F.3d at 375 (documents "reflect[ing] the internal dialogue at the EPA

[7] The Court has reviewed each document identified in Appendix III: PRIV0000015, PRIV0000016, PRIV0000001, PRIV0000017, PRIV0000018, PRIV0000019, PRIV0000020, CITY01488239, CITY01488233, CITY01488238, CITY01488232.

regarding the proposals, suggestions, recommendations, and early draft versions of the proposed rule" were protected by deliberative process privilege).

Two of the contested documents—CITY01488233 and CITY01488239—are versions of the same draft traffic stop memorandum in PRIV0000018 and PRIV0000020. However, CITY01488233 and CITY01488239 contain only background information and analysis of regarding the City's traffic stops. Neither contains information that would reflect the "internal dialogue" and therefore are not protected by deliberative process privilege.

But three documents from Appendix III—PRIV0000015, PRIV0000017, and PRIV0000019—are cover emails that contain no substantive information themselves. For example, PRIV0000019 is a single email that says in its entirety: "Working document." These kinds of substance-less correspondences cannot be said to "reflect the give-and-take of the consultative process" that the privilege is meant to protect. *Nat'l Immigrant Justice Ctr.*, 953 F.3d at 508.

CITY01488233, CITY01488239, PRIV0000015, PRIV0000017, and PRIV0000019 are to be produced from Appendix III. The remaining documents in Appendix III are protected by the privilege.

#### iv. Plaintiffs have not established a particularized need that outweighs the City's otherwise valid privilege assertions.

Plaintiffs argue that even if deliberative process applies, the underlying documents should still be disclosed because "there is a sufficient showing of a particularized need to outweigh the reasons for confidentiality." [259] at 7 (citing

*United States v. Farley*, 11 F.3d 1385, 1389 (7th Cir. 1993)). Courts must "weigh the need for truth against the importance of the relationship or policy sought to be furthered by the privilege, and the likelihood that recognition of the privilege will in fact protect that relationship in the factual setting of the case." *Memorial Hosp. for McHenry Cnty v. Shadur*, 664 F.2d 1058, 1061–62 (7th Cir. 1981) (citation omitted).

Having reviewed the documents at issue, the Court finds that Plaintiffs' need for the documents does not outweigh the reasons for the confidentiality. City officials' ability to speak with one another candidly about the issues facing the City and its residents is significant. The documents Plaintiffs seek, while relevant to their claims, are not of such import that the City's failure to disclose them will impact Plaintiffs' ability to litigate their claims.

**B. The Kapustianyk Deposition**

The Court turns next to Plaintiffs' challenges to the privilege assertions made during Kapustianyk's deposition. At various points, the City instructed Kapustianyk not to answer questions based on attorney-client privilege, deliberative process privilege, and purported ongoing settlement negotiations.

The Court first addresses the City's invocation of ongoing settlement negotiations. As both parties recognize, "[a]llowing discovery of negotiations between parties to an ongoing litigation can have a chilling effect on the parties' willingness to enter into settlement negotiations." *White v. Kenneth Warren & Son, Ltd.*, 203 F.R.D. 364, 368 (N.D. Ill. 2001) As a result, "courts are wary of permitting disclosure of *settlement negotiations*." *Id.* (emphasis added). But there is no indication in any of the challenged

testimony that Plaintiffs' counsel sought discovery into the *negotiations* of any settlement agreement, nor the terms of any agreement. That something may have occurred in the course of settlement negotiations in one case does not mean that it is forever foreclosed from being discovered in another case. Accordingly, the Court rejects the City's assertions of settlement negotiations as a means of limiting Kapustianyk's testimony.

**i. Questions about the documents and information CPD referred to while drafting the policy.**

The City asserted attorney client privilege and deliberative process privilege when instructing Kapustianyk not to answer questions about the documents that CPD referenced while drafting its traffic stop policy. For example, counsel for the City objected when Plaintiffs' counsel asked Kapustianyk if CPD "consider[ed] any information from the San Francisco Police Commission in developing its draft traffic stop process?" [259-1] at 174:3-9.[8]

Neither attorney client privilege nor deliberative process privilege can preclude Kapustianyk from answering this question because neither privilege applies to underlying facts. *See Andersen v. City of Chicago*, No. 16 C 1963, 2018 WL 11651213, at *2 (N.D. Ill. May 4, 2018) ("The attorney-client privilege does not protect underlying facts that are communicated between an attorney and client, such facts may be discoverable."); *Bobkoski v. Bd. of Educ. of Cary Consol. Sch. Dist. 26*, 141 F.R.D. 88, 91 (N.D. Ill. 1992) ("the [deliberative process] privilege only protects

[8] Counsel for the City did not assert attorney client privilege in response to this specific question, but counsel did do so in response to questions of similar form and function. *E.g.*, [259-1] at 176:17-22.

expressions of opinion or recommendations; it does not protect purely factual material."). The law distinguishes between "purely factual material," which is not protected, and "factual matters inextricably intertwined with [predecisional deliberative] discussions," which are protected. *Enviro Tech.*, 371 F.3d at 375. It is not always clear (and the case law provides little guidance) where any particular discovery request falls on that spectrum, but here, the information sought is purely factual. Whether and which documents CPD referred to in developing its traffic stop policy is a question of pure fact. Kapustianyk's answers to that question are not protected by either privilege. This likewise applies to the City's assertion of privilege in response to questions about what national standards CPD reviewed while drafting its policy. *E.g.,* [259-1] at 32:7-12.

**ii. Questions about how community input was incorporated into the draft policy.**

The City also asserted the deliberative process privilege when Kapustianyk was asked "[w]hat aspects of [the] draft . . . are the result of community input?" [259-1] at 41:13-18. Unlike the pure factual questions described *supra*, this question calls for information that is more intertwined with the City's predecisional deliberative discussions. Any answer would necessarily reveal what weight the City placed in community input relative to other inputs and would thus "reflect the give-and-take of the consultative process" that the privilege is meant to protect. *Nat'l Immigrant Justice Ctr.*, 953 F.3d at 508. Accordingly, the Court finds that the City's privilege assertion in this instance was proper.

**iii. Feedback from the superintendent and other CPD leaders.**

The City also asserted the deliberative process privilege when Plaintiffs' counsel asked Kapustianyk about the feedback he received from Superintendent Snelling and other CPD officials on the draft policy. *E.g.*, [259-1] at 38:21. Such communications are plainly "part of the decision-making process of a governmental agency." *United States v. Farley*, 11 F.3d 1385, 1389 (7th Cir. 1993). The City's privilege assertion in these circumstances was thus proper.

**iv. The City did not waive any claims to privilege.**

Plaintiffs argue that even if the City properly asserted privilege over Plaintiffs' questions regarding the draft policy, the City's privilege claims are nonetheless waived. [259] at 12-14. Plaintiffs contend that because Kapustianyk answered certain questions *from the City* about Snelling's statements regarding the draft policy, the City has waived privilege regarding that policy generally.

"Waiver generally is a knowing and intelligent relinquishment of a known right or privilege." *Cruz v. Guevara*, No. 23 C 4268, 2024 WL 4449944, at *13 (N.D. Ill. Oct. 9, 2024); *see also Turner v. City of Chicago*, No. 15 CV 06741, 2017 WL 552876, at *3 (N.D. Ill. Feb. 10, 2017) (disclosure waives the privilege "only for the document or information specifically released"). Waiver of the deliberative process privilege "should not be lightly inferred." *Walker v. Adm'r of Burge*, No. 21 C 4231, 2025 WL 4677187, at *2 (N.D. Ill. July 24, 2025).

Specifically, Plaintiffs point to the following exchange as evidence of waiver:

> Q: Lieutenant Kapustianyk, you mentioned being involved in the communications with Superintendent Snelling concerning traffic stops, and you disclosed some nonprivileged communications you had with him regarding respectful policing and the demeanor of officers during traffic stop encounters as comments made by Superintendent Snelling on the topic. Did he make any other statements concerning his views on traffic stops during those communications of the nonprivileged nature?
>
> A: Yeah, I mean, he would – the superintendent is coming from a training background, is very adamant in training officers to make sure that they're doing things properly, making sure that their interactions are not only respectful but lawful and constitutional. He believes training is a significant focus of that coming from his background and believes that an emphasis on training and identifying those -- the standards in terms of respectful treatment, professional actions, constitutional stops are significant in his goals for envisioning traffic stops.

[259-1] at 187:14–188:10.

Kapustianyk's response here—which stands for little more than a general statement that the superintendent cared about training and abiding by the constitution—does not amount to a "knowing and intelligent relinquishment" of any right. The Court declines to find that the City waived the deliberative process privilege.

### C. Traffic Stop Policy Drafts

Finally, Plaintiffs challenge the City's non-production of multiple traffic stop policy drafts. Kapustianyk revealed the existence of such drafts during his deposition. *See* [259] at 14-15. Plaintiffs argue that the documents should have been produced pursuant to their request for production no. 47 ("RFP"), which requests (in relevant part) "[a]ll documents relating to policies, practices, procedures, guidelines, directives, general order, or special orders relating to: (a) Conducting traffic stops,

whether for the purpose of enforcing traffic laws or for other purposes such as investigating criminal activity unrelated to an alleged traffic violation." [259] at 15. Plaintiffs argue that no privilege applies to the documents.

The City argues that RFP does not call for any "drafts," so the City was justified in not producing these documents. But RFP 47 plainly calls for "***all documents relating to policies***. . ." The City's argument is in essence that a draft of a policy does not relate to that policy. The Court does not agree. The City is to produce the draft documents in accordance with RFP 47.

## IV. CONCLUSION

For the reasons stated herein, Plaintiff's motion [259] to compel the production of documents and certain testimony from one of the City's witnesses is granted in part and denied in part. The City is to reproduce documents as necessary to be compliant with this order by September 30, 2026. The parties are to meet and confer regarding whether it is necessary to re-depose Kapustianyk.

E N T E R:

Dated: September 24, 2026

Mary M Rowland

MARY M. ROWLAND
United States District Judge